308 So.2d 481 (1975)
T. L. JAMES & CO., INC., et al.
v.
Mrs. Goldie Greig MONTGOMERY et al.
Mrs. Goldie Greig MONTGOMERY, Administratrix of the Succession of Thomas William Montgomery, Jr.
v.
Thomas William MONTGOMERY, III, et al.
Nos. 10130, 10131.
Court of Appeal of Louisiana, First Circuit.
February 10, 1975.
Rehearing Denied March 12, 1975.
Writ Granted April 24, 1975.
Writ Refused April 24, 1975.
*482 Iddo Pittman, Jr., Hammond, for Goldie Greig Montgomery and Monty George Montgomery.
Wm. L. Kimball, Port Allen, and Charles O. Dupont, Plaquemine, for Thomas William Montgomery, III and Mrs. Sybil Chauvin Montgomery.
Robert G. Dawkins, Ruston, for T. L. James & Co., Inc.
Before SARTAIN, ELLIS and de la HOUSSAYE, JJ.
de la HOUSSAYE, Judge.

No. 10130
These two consolidated cases present facts, which, for the most part, are undisputed. The cases arose of the acts of Thomas W. Montgomery, Jr., most of which were done shortly before his death by suicide on January 23, 1971.
Thomas W. Montgomery, Jr. (hereinafter referred to as "the decedent") was married twice: first, on October 12, 1935, to Sybil Montgomery (hereinafter referred to as "the first wife"), which marriage was terminated by divorce on May 27, 1958; then to Goldie Greig Montgomery (hereinafter referred to as "the second wife") on June 6, 1958. During his marriage to his *483 first wife, decedent became employed with T. L. James & Co., Inc. (hereinafter referred to as "the company") and started a retirement and a profit sharing plan provided by the company. He also started a term insurance policy provided through the company. During his first marriage, one child was born, Thomas W. Montgomery, III (hereinafter referred to as "the oldest son"). During his second marriage, one child was born, Monty Montgomery (hereinafter referred to as "the youngest son"). Decedent entered into a community property settlement with his first wife on December 10, 1958. On August 28, 1970, decedent placed $11,940.00 in a safe deposit box in the name of the oldest son and named him as the sole beneficiary on the insurance policy. On September 2, 1970, decedent also named the oldest son as the sole beneficiary on both the retirement plan and the profit sharing plan. On September 14, 1970, a suit for separation from bed and board was filed by his second wife, but on January 23, 1971, decedent committed suicide. At the time of his death; the value of the retirement fund was $37,545.30; the profit sharing fund was $26,330.14; and the life insurance value was $20,500.00. The proceeds of the life insurance policy were paid to the oldest son.
In suit No. 10130, a concursus proceeding was brought by the company seeking to have the court determine the ownership of the proceeds of the profit sharing trust fund and the retirement trust fund. Joining in as plaintiffs in the concursus proceeding were the trustees of the company's Employee's Profit Sharing Trust No. XX-XXXXXXX and the trustees for Employees of T. L. James Co., Inc., No. XX-XXXXXXX. Named as defendants in this concursus proceeding were Thomas W. Montgomery, III, Monty Montgomery, Mrs. Sybil Montgomery, and Mrs. Goldie Greig Montgomery, Individually and as Administratrix of the Succession of Thomas William Montgomery, Jr. An attorney was appointed by the court to represent the interests of Monty Montgomery, as he is a minor.
In suit No. 10131, Mrs. Goldie Montgomery, as the administratrix of the Succession of Thomas W. Montgomery, Jr., filed suit against Thomas W. Montgomery, III, seeking the return of the cash placed in the safe deposit box as well as the proceeds of the life insurance policy paid to the oldest son. In the alternative, she sought a return of the premiums paid by decedent for the insurance.
A petition of intervention was filed by Mrs. Sybil Montgomery in suit No. 10131 seeking judgment in favor of the oldest son, but, in the alternative, seeking judgment in her favor for the cash and life insurance.
The oldest son claimed that he was entitled to the retirement and profit sharing funds, as well as the life insurance, because he is the named beneficiary. The second wife sought the return of the life insurance paid to the oldest son to the community of acquets and gains as well as the proceeds of both of the trust funds alleging that they form a part of the community existing between her and the decedent and that decedent disposed of this property to defraud her of her community rights. The oldest son also claimed the $11,940.00 as a gift from his father while the second wife sought the return of this money to the community alleging that it was not intended by decedent to be a gift to the oldest son but was an attempt to hide his assets from his second wife and thereby defraud her of her community rights. The first wife claimed that the retirement and profit sharing funds, the life insurance, and the cash formed part of the first community of acquets and gains and should be returned to her.
In suit No. 10130, the trial court rendered judgment in favor of the oldest son decreeing him to be entitled to the proceeds of the profit sharing fund and the retirement fund. In suit No. 10131, the court ruled that the $11,940.00 cash deposited in the safe deposit box be returned to the second community of acquets and *484 gains. However, the court ruled that the proceeds of the life insurance policy paid to the oldest son belonged to him as he was the named beneficiary. From these judgments, all parties have appealed.

The $11,940.00
On August 28, 1940, decedent visited his oldest son in Lavonia, Louisiana, carrying with him the sum of $11,940.00, cash, in a brown paper bag. The oldest son testified that both he and the decedent went to the Lavonia Guaranty Bank & Trust in Lavonia, with whom the oldest son did business, rented a safe deposit box (which was paid for by decedent) in the name of the oldest son, and placed the brown envelope with the money into the box. He also testified that none of this money was removed or used by him until after the death of his father. The second wife testified that $10,000.00 of this money came from the sale of real estate owned by the community to one Howard Nichols in Hammond during the month of August 1970.
In ordering the return of this cash to the community, the trial court stated:
"Considering the testimony of Montgomery, III, which is self-serving, the amount of money involved, and the circumstances surrounding the transactions, this court is of the opinion that there was no gift intended. Montgomery, Jr., paid the box rent, none of the funds were used, and no tax was paid on a transfer of funds. Furthermore, Montgomery, III, exercised no act of ownership over the funds until after his father's death." (T-190).
The oldest son contends that this was a manual gift of movable property which requires no other formality than that of actual delivery; that the record reflects ample evidence that decedent did intend this to be a gift as the only person allowed to enter the box was the oldest son; that the bank where the money was deposited was the bank used by the oldest son, not decedent, and because, at a later date, decedent mailed an act of donation to his son upon which he inscribed on the evelope in which the act was contained the words "Place in safety box" thereby indicating that the safety deposit box and its contents were the property of the oldest son.
Under La.C.C. Art. 2404,[1] the husband has the right to make a gift of the movables belonging to the community without the consent and permission of his wife, as long as "... the whole, or of a quota of the movables, ..." are not conveyed. Oliphint v. Oliphint, 219 La. 781, 54 So.2d 18 (1951). La.C.C. Art. 1539 states that:
"The manual gift, that is, the giving of corporeal movable effects, accompanied by a real delivery, is not subject to any formality."
It is clear from the code and from the jurisprudence that no formalities are required for manual gifts, and that if the donee has been put by the donor into corporeal possession of the effects of the gift, the donation has full effect even though not accepted in express terms. La. C.C. Art. 1541; Succession of Zacherie, 119 La. 150, 43 So. 988 (1907). However, *485 under Art. 1539, La.C.C., by the definition of manual gift given in that article, two events must occur before the effects of the article arise, namely, there must be a giving accompanied by a real delivery, and the burden of proof is on the donee, who must show the requisite intent of the donor to make a donation. As was stated in Succession of Woolfolk, 225 La. 1, 71 So.2d 861 (1954):
"This article (Art. 1539) does not dispense, however, with the necessity of proof of intention on the part of the donor to give. There is an old Latin maxim in law which reads: `Nemo presumitur donare', i.e., `No one is presumed to give.' This is but another way of stating that the burden of proving the donation is on the donee, and, under the decisions of this Court, the proof to support the donation must be strong and convincing. See: Funderburk v. Funderburk, 214 La. 717, 38 So.2d 502, and cases therein cited." Id. at 864.
Recently, we have reiterated this jurisprudence in Faust v. Curtis, 278 So.2d 875 (La.App., 1st Cir.-1973), in which we found that the requisite proof was adduced to show the intent of the donor to give, and Succession of Dykes, 258 So.2d 606 (La. App., 1st Cir.-1972), in which we upheld the trial courts' determination that the intent was not shown.
The second wife also points to L.C.C. Art. 2277 for support of her contention that clear and convincing proof was not adduced by the oldest son to show the necessary intent of decedent. Art. 2277 states:
"All agreements relative to movable property, and all contracts for the payment of money, where the value does not exceed five hundred dollars, which are not reduced to writing, may be proved by any other competent evidence; such contracts or agreements, above five hundred dollars in value, must be proved at least by one credible witness, and other corroborating circumstances."
In Succession of McBurney, 162 La. 758, 111 So. 86 (1926), the decedent had signed blank checks with which the defendant, acting as the decedent's agent, purchased bonds. The defendant returned the bonds to the decedent who then allegedly gave them to the defendant. This alleged donation could only be supported by the testimony of the defendant, but the court would not uphold the transfer as valid even though the good faith and honesty of the defendant was accepted and all that he said was true as Art. 2277 was applied. See also Succession of Oulliber v. Oulliber, 204 So.2d 625 (La.App., 4th Cir.-1967).
The trial court, who heard the testimony of all witnesses, evaluated their demeanor and weighed their testimony along with the circumstantial evidence surrounding this transaction, concluded that decedent did not intend to give the $11,940.00 to the oldest son as a gift. We hold that the evidence presented in the record does not show that he has committed manifest error. Accordingly, the judgment condemning the oldest son to pay to the succession $11,940.00 is affirmed.

The Life Insurance
On August 28, 1970, decedent named his oldest son beneficiary on a life insurance policy furnished to him through his employment with the company under a group plan with Aetna Life Insurance Company. This insurance is term insurance with no cash surrender value. Decedent began his coverage under this policy in 1950, when he was married to his first wife. Payment of the insurance premiums were made by the employee as well as the company. The company's records indicate that decedent paid $0.50 per month for each $1,000.00 unit of coverage, but these records only go back to 1965. It is unknown exactly what decedent contributed to this life insurance plan prior to that time. The second wife seeks recovery of the proceeds of the life insurance which was paid to the oldest son after decedent died, primarily, on the ground that it is against the public policy *486 of this state to allow decedent to avoid the forced heirship provisions of the constitution.[2]
It is well established in our law that the proceeds or avails of life insurance, if payable to a named beneficiary and not to the estate or to the heirs, executors or administrators of the insured, belong to the beneficiary named in the policy and are not considered as a part of the estate of the insured, the reason being that the proceeds or avails of life insurance do not come into existence during the lifetime of the insured, and do not at any time belong to him but pass by virtue of the contract directly from the insurer to the beneficiary named in the policy. Succession of Rabouin, 201 La. 227, 9 So.2d 529 (1942); Vinson v. Vinson, 105 La. 30, 29 So. 701 (1901); Sizeler v. Sizeler, 170 La. 128, 127 So. 388 (1930); Smith v. Succession of Smith, 298 So.2d 146 (La.App., 1st Cir. 1974).
Since the proceeds of life insurance form no part of decedent's estate, the rules of the Civil Code relating to donations inter vivos or mortis causa have no application as respects life insurance policies, nor are the proceeds subject to community rights. See Succession of Rabouin, infra, and the numerous cases cited therein, also, Standard Life Insurance Company of the South v. Franks, La., 278 So.2d 112.
Recognizing these well-established jurisprudential rules, the second wife urges this court to re-examine this fundamental law because of the fear of a decedent eliminating from his estate the proceeds of life insurance so as to defraud the wife's interest in her share of the community property and to circumvent the forced heirship laws of this state. She urges this court to adopt the approach taken by the court's handling of U. S. Savings Bonds, citing Succession of Videau, 197 So.2d 655 (La.App., 4th Cir.-1967) and Succession of Guerre, 197 So.2d 738 (La.App., 4th Cir.-1967), in which the court recognized that it would not permit the circumvention of the community property and forced heirship laws of this state by the purchase of U.S. Savings Bonds. However, both Succession of Guerre and Succession of Videau expressly recognized that the jurisprudential rules affecting bonds are not analogous to proceeds or avails of life insurance. The second wife argues that decedent transferred proceeds of the life insurance (as well as the proceeds of the retirement fund and the pension fund) to defraud her rights to her share of the community of acquets and gains (relying on Art. 2404, La.C.C.) as well as avoiding the forced heirship rights of the youngest son. The trial court never found this to be a fact as it concluded that the provisions of Art. 2404 do not apply to life insurance. The second wife testified that decedent and his youngest son "were very, very close. He was a devoted father to Monty George." (T-54, 55). Although there was self serving testimony by the second wife of marital difficulties and animosity between her and decedent, there was no real proof that decedent intended to defraud her of her rights. The allegation of fraud is simply not supported by the evidence and we cannot find that the trial court has committed manifest error in not applying Art. 2404 in this case.

Retirement and Profit Sharing Plans
Decedent started both of these trust plans with the company while he was married *487 to his first wife. Contributions to both of these plans were made only by the company for the benefit of its employees and these benefits are determined on a graduated scale based on the employee's earnings and the amount of time he is employed by the company. The employee is not entitled to any benefits from the fund unless he retires, resigns, becomes totally and permanently disabled or dies. Decedent participated in the profit sharing plan from December 31, 1949, to January 23, 1971 (21 years), and participated in the retirement plan since January 1, 1955, to January 23, 1971 (15 years). The employee is not allowed to transfer, pledge, or encumber the benefits of the plans until his interest in the plans become vested, that is, he can use the fund only until he receives the same by virtue of his resignation, retirement, death or total and permanent disability. These funds are administered by a trustee and the employee has no control over the funds except that he has the right to name a beneficiary to the death benefits of the funds.
The second wife maintains that the proceeds of the plans form a part of their community of acquets and gains, and decedent cannot deprive her of her rights to these funds by merely naming a beneficiary to its death benefits, citing Messersmith v. Messersmith, 229 La. 495, 86 So.2d 169 (1956); Lafitte v. Lafitte, 232 So.2d 92 (La.App., 2nd Cir.-1970); and Langlinais v. David, 289 So.2d 343 (La.App., 3rd Cir.-1970). We hold that, in this case, these plans form no part of her community property. Succession of Rockvoan, 141 So. 2d 438 (La.App., 4th Cir.-1962).
In Succession of Rockvoan, our brethren on the 4th Circuit had this issue presented to them in a factually similar case. There, decedent designated his son by a previous marriage as the beneficiary of the death benefits of his retirement plan. His widow by second marriage, as the administratrix of his estate, contended that the death benefit payment under a retirement plan is community property and must be included in the decedent's community estate. Decedent had entered this plan prior to his marriage to his second wife. The plan before that court was similar in just about all respects as the plans before this court, except that decedent, as well as his employer, contributed to the fund. The court, awarding the proceeds of the retirement fund to the son, based its decision on the ground that the provision of the death benefit contained in the retirement fund could not be distinguished from a contract of life insurance, and therefore, the law relative to life insurance is applicable;
"While we do not hold that the Retirement System with which we are dealing constitutes a contract of insurance, it nevertheless has features closely analogous thereto. This is especially true of its death benefit provisions. We are unable to distinguish these provisions from a contract of life insurance in that they constitute an agreement to pay a specified sum on the death of the member, and like life insurance, the proceeds or avails thereof do not come into existence during the lifetime of the member, and consequently do not belong at any time to him nor do they form a part of his estate." Id. at 440.
We, too, are unable to distinguish the death benefit provisions of these plans from the death benefits of life insurance. The Messersmith Case, infra, is not applicable to the instant case in that it concerned an annuity contract in which the husband had an interest. The Supreme Court held that this type of contract is not an insurance policy and the special rules applicable to insurance policies are not applicable to annuity contracts. Also, this contract was taken out during the existence of the community of acquets and gains. The Lafitte Case, infra, was concerned with the settlement of community property, after divorce and during the lifetime of the husband and wife. Death benefits were not discussed but the court held that the plan was community property because it was acquired during the marriage, *488 and through the common labor and industry of the husband and the wife. In Langlinais, infra, which also was concerned with the settlement of community property after divorce and during the lifetime of the husband and wife the court considered the benefits due under a retirement plan to be an asset of the community. However, this arose during the marriage of the parties and the death benefits were not discussed.
In a recent decision of this court, Teachers' Retirement System of Louisiana v. Vial et al., 304 So.2d 53 (La.App., 1st Cir. 1975), we were called upon to decide the status of benefits of proceeds of the Louisiana Teacher's Retirement System under facts strikingly similar to this case. In the Vial Case, the husband became a member of the retirement system before his marriage to his first wife. During his marriage to his first wife, one child was born. After the death of his first wife, he remarried and named the second wife as beneficiary of the death benefits of the fund. A marriage contract was executed between the husband and his second wife in which the community of acquets and gains was renounced and declaring all property acquired before and after the marriage to be the separate property of each. After his death, his sole heir claimed that the proceeds of the retirement fund belonged to the community of the husband and the first wife. This court rejected that argument and adopted the position taken by Succession of Rockvoan., infra, and quoted, with approval, the rationale of that case.
Accordingly, we hold that the proceeds of the trust funds belong to the oldest son as the named beneficiary and affirm the decision of the trial court. Due to the status of the pleadings as apparently acknowledged by all parties herein, we are not called upon to decide whether or not the heirs of decedent are required to return to his succession the funds that decedent contributed for the establishment of the life insurance and trust funds. This action would have to be filed against all heirs of the decedent, not just the oldest son.
In both suits, the trial court ordered that the oldest son, the second wife and the first wife pay the costs in the portion of an undivided one-third each. The first wife claims that she only intervened in the suit to support the position of the oldest son, had no interest in the funds and should not be cast for costs. The oldest son maintains that since he was awarded judgment in the concursus proceeding, he should not be liable for the costs.
Articles 4659 and 1920, La.C.C.P.[3] are controlling in this matter. They grant to the trial court discretion to assess costs as it may consider equitable. We find no abuse of the trial court's discretion in assessing costs against these three parties in a portion of one-third each.
Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed in all respects. Costs of this appeal (No. *489 10130) are to be borne by appellant, Mrs. Goldie Greig Montgomery, Administratrix of the Estate of Thomas Montgomery, Jr.
Judgment affirmed.

No. 10131
This case is consolidated with the case of T. L. James & Company, Inc., et al v. Mrs. Goldie Greig Montgomery, et al, No. 10130. For the reasons therein assigned, the judgment appealed from is affirmed, with appellants, Thomas Montgomery, III and Mrs. Sybil Montgomery, to pay all costs for which they may be liable under law.
Affirmed.
NOTES
[1] Art. 2404. Rights and restrictions of husband as master of community

Art. 2404. The husband is the head and master of the partnership or community of gains; he administers its effects, disposes of the revenues which they produce, and may alienate them by an onerous title, without the consent and permission of his wife.
He can make no conveyance inter vivos, by a gratuitous title, of the immovables of the community, nor of the whole, or of a quota of the movables, unless it be for the establishment of the children of the marriage. A gratuitous title within the contemplation of this article embraces all titles wherein there is no direct, material advantage to the donor.
Nevertheless he may dispose of the movable effects by a gratuitous and particular title, to the benefit of all persons.
But if it should be proved that the husband has sold the common property, or otherwise disposed of the same by fraud, to injure his wife, she may have her action against the heirs of her husband, in support of her claim in one-half of the property, on her satisfactorily proving the fraud.
[2] "The Legislature may authorize the creation of express trusts for any purpose, including but not limited to private trusts, trusts for the benefit of employees, trusts for educational, charitable, or religious purposes, and mixed trusts for any combination of purposes. Substitutions not in trust are and remain prohibited; but trusts may contain substitutions to the extent authorized by the Legislature. No law shall be passed abolishing forced heirship; but the legitime may be placed in trust to the extent authorized by the Legislature. Children lawfully adopted shall become forced heirs to the same extent as if born to the adopter and shall retain their rights as heirs of their blood relatives, but their blood relatives shall have their rights of inheritance from these children terminated." La.Const. of 1921, art. 4, § 16.
[3] Art. 4659 provides:

When money has been deposited into the registry of the court by the plaintiff, neither he nor any other party shall be required to pay any of the costs of the proceedings as they accrue, but these shall be deducted from the money on deposit. The court may award the successful claimant judgment for the costs of the proceeding which have been deducted from the money on deposit, or any portion thereof, against any other claimant who contested his right thereto, as in its judgment may be considered equitable.
In all other instances, the court may render judgment for costs as it considers equitable.
Article 1920 provides:
Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.
Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against party, as it may consider equitable.