324 So.2d 461 (1975)
Sybil Jane SWOPE, Plaintiff-Appellee,
v.
William Joseph MITCHELL, Jr., Defendant-Appellant.
No. 5281.
Court of Appeal of Louisiana, Third Circuit.
December 24, 1975.
Peter C. Piccione, Lafayette, for defendant-appellant.
Bares & Placer by J. Michael Placer, Lafayette, for plaintiff-appellee.
Before MILLER, WATSON and CUTRER, JJ.
WATSON, Judge.
Plaintiff, Sybil Jane Swope, filed this suit against defendant, William Joseph Mitchell, Jr., her former husband, to obtain a partition of the community of acquets *462 and gains. Subsequently, the parties entered into a compromise partition of the property with the exception of Mitchell's retirement pay from the United States Marine Corps, the disposition of which was left to the court. The trial court rendered judgment awarding the wife Sybil Swope 11/25 of Mitchell's retirement pay. Captain Mitchell served in the Marines for 25 years; 22 of those years were during the existence of the community; and the wife was awarded 11/25 of the retirement income. The amount due from dissolution of the community until rendition of judgment was calculated at $15,113.45, and Mitchell was ordered to pay his wife 11/25 of all future payments as received.
Defendant Mitchell has appealed, contending:
(1) that the trial court erred in finding that his retirement pay formed part of the community of acquets and gains; and
(2) in the alternative, that the percentage awarded his wife is too large and partially consists of benefits earned in non-community property states.
The issue is whether Mitchell's retirement pay constitutes an asset acquired during the existence of the community. A second issue is whether, if the retirement pay is an asset of the community, all of it has that character or only the portion earned while the parties were domiciled in community property states.
Facts
The facts were stipulated as follows:
Mitchell entered the Marines on December 2, 1940, at Des Moines, Iowa, and was voluntarily discharged with the rank of captain on June 30, 1965, at Jacksonville, North Carolina. His retirement pay commenced July 1, 1965. Mitchell and his wife were married August 1, 1943, in Louisiana and remained in the State for three months after the marriage. Immediately following Mitchell's retirement, the parties returned to Lafayette, Louisiana. The community was dissolved on March 17, 1970. A judgment of separation was obtained in Lafayette on April 23, 1970, and a divorce from the same court on May 14, 1971. During the course of Mitchell's military career the parties resided in various places throughout the United States and abroad.
Codal Provisions
The parties' marriage in Louisiana created a community of property by operation of the law.
"LSA-C.C. art. 2399: Every marriage contracted in this State, superinduces of right partnership or community of acquets and gains, if there be no stipulation to the contrary." The property falling into the community is defined in LSA-C.C. art. 2402 in pertinent part as follows:
". . . the produce of the reciprocal industry and labor of both husband and wife, and of the estate which they may acquire during the marriage, . . ."
Louisiana Jurisprudence
The question of a divorced wife's interest in her former husband's retirement benefits has previously been considered in Louisiana. Daigre v. Daigre, 228 La. 682, 83 So.2d 900 (1955), held that benefits under a noncontributory, unenforceable pension plan are in the nature of a gratuity and pension payments made after dissolution of the community are separate property. Daigre has not been followed in the later cases, which are distinguishable by the enforceable nature of the pension plans considered. In Laffitte v. Laffitte, 232 So.2d 92 (La.App. 2 Cir. 1970), and 253 So.2d 120 (La.App. 2 Cir. 1971), an employee husband's vested interest in a profit-sharing plan earned during the marriage was declared an asset of the community. The wife's participation was limited to one-half the rights acquired while there *463 was a community between the parties and her right to that interest was made effective only when the proceeds were available to her husband. Langlinais v. David, 289 So.2d 343 (La.App. 3 Cir. 1974), decided that a divorced wife was entitled to one-half her former husband's interest in a retirement fund. Since the community in Langlinais, supra, was dissolved before the husband's retirement, the wife was not entitled to one-half of the monthly retirement check but only to one-half the value of the fund as of the date of dissolution of the community. This distinction is not applicable here where the husband retired prior to the dissolution of the community. Hamilton v. Hamilton, 258 So.2d 661 (La.App. 3 Cir. 1972), held that a wife's interest in the employee husband's retirement and thrift plan was limited to one-half that portion derived from contributions made during the period of the marriage. Lynch v. Lawrence, 293 So.2d 598 (La.App. 4 Cir. 1975), writs refused La., 295 So.2d 809 and 814, dealt with the divorced wife's share in her husband's noncontributory pension plan with the telephone company. The husband's interest had vested before the dissolution of the community, although he had not retired. Lynch held that the wife was entitled to receive one-half the discounted value of the deferred pension plan as of the date of dissolution, but payment would not begin until her husband's retirement. Other cases, such as the recent one of T. L. James & Co., Inc. v. Montgomery, 308 So.2d 481 (La.App. 1 Cir. 1975), writ granted La., 310 So.2d 850, reversed 310 So.2d 856 (La.1975), deal with death benefits in retirement plans.
The only Louisiana cases which have been found dealing specifically with military retirement and disability pay are: Howard v. Ingle, 180 So. 248 (La.App. 2 Cir. 1938); Succession of Lewis, 192 La. 734, 189 So. 118 (1939); and Succession of Scott, 231 La. 381, 91 So.2d 574 (1956). Howard, supra, holds that a pension for military service which was earned and payment of which had commenced prior to marriage did not fall into the community. Lewis, supra, holds that United States Service Bonds earned by military service and received prior to marriage are separate property. The instant case presents the converse situation, and the converse of Howard and Lewis is that a pension for military service which was earned and payment of which had commenced during marriage is community property. Scott, supra, holds that government payments to a veteran for a disability sustained in the military during his marriage are community property.
Jurisprudence of Other Jurisdictions
Other states are in accord with the Louisiana jurisprudence to the effect that vested retirement benefits, attributable to employment during marriage, constitute a community asset and have applied this rule to military retirement.
The California case of In re Marriage of Fithian, 10 Cal.3d 592, 111 Cal.Rptr. 369, 517 P.2d 449 (1974), cert. den. 419 U.S. 825, 95 S.Ct. 41, 42 L.Ed. 2d 48, is specifically concerned with military retirement pay and holds that it is properly the subject of state community property laws. There, the parties had been married for 16 of the husband's 22 years in the Marine Corps and became residents of California prior to the husband's retirement. 71% of the retirement pay was declared to be community property, and the husband was directed to pay 35 ½ of the benefits to his former wife as he received them, a result very similar to that reached by the trial court herein.
Mora v. Mora, 429 S.W.2d 660 (Tex.Civ.App.1968), is a Texas case which holds that the portion of a military retirement plan earned during marriage constitutes community property. The proportionate amount was calculated and expressed in a fraction in the same way the trial court calculated Sybil Swope's interest here.
The same conclusion has been reached in New Mexico, LeClert v. LeClert, 80 N.M. *464 235, 453 P.2d 755 (1969); Washington, Payne v. Payne, 82 Wash.2d 573, 512 P.2d 736 (1973); Idaho, Ramsey v. Ramsey, 96 Idaho 672, 535 P.2d 53 (1975); and other states.
One of the contentions made by Mitchell is that his retirement pay is compensation for his present service in the Reserve rather than payment for past services. This is incorrect and was appropriately dealt with in Fithian, supra, as follows:
"Apart from the foregoing judicial declarations on tangential issues, military retirement pay must be realistically viewed as compensation for past, not present, services. Congress' purpose in creating the retirement pay system was to enhance the morale of the serviceman and to encourage him to remain in the military, and not to compensate him for his limited responsibility to the government after his retirement. Indeed, the amount of retirement pay a serviceman receives bears no relation to any continuing duties after retirement, but is calculated solely on the basis of the number of years served on active duty and the rank attained prior to retirement. (10 U.S.C. § 6323(e).) Moreover, should the serviceman actually be recalled to active duty, he is not only additionally compensated according to the active duty pay scale, but his rate of retirement pay is also increased thereafter. (10 U.S.C. § 1402.) The conclusion is inescapable that retirement pay is awarded in return for services previously rendered and therefore is divisible as community property to the extent the serviceman was married while on active duty."
111 Cal. Rptr. 376, 377, 517 P.2d 449, 456.
Residence Outside Louisiana
Mitchell contends that the portion of his retirement earned during residence in non-community property states is separate property. However, his right to retirement pay was acquired during the marriage and is presumed to be community property in the absence of strong proof to the contrary. LSA-C.C. art. 2405[1]; R.D.M. Corporation v. Patterson, 255 La. 301, 230 So.2d 820 (1970). In addition, the record does not reveal whether Mitchell's various military transfers were accompanied by an intention to change the couple's domicile. In the absence of evidence showing such an intention, the mere fact that he was assigned from place to place did not change the legal residence of the parties. 25 Am.Jur.2d § 39; LSA-R.S. 1:54; [2] LSA-C.C. art. 46.[3] The matrimonial domicile was originally established in Louisiana, and there is no proof that it was ever changed. Stevens v. Allen, 139 La. 658, 71 So. 936 (1916). Although Mitchell entered the Marine Corps in *465 Iowa, the record does not reveal whether Iowa was in fact his domicile. Since the parties were married in Louisiana, returned to Louisiana after Mitchell's retirement, and were divorced in a Louisiana court, we conclude that they regarded this State as their permanent home and domicile. See the Idaho case of Ramsey v. Ramsey, supra, which also placed the burden of proof to prove change of domicile and separate nature of property on the husband alleging these facts. Here, Mitchell has not met that burden.
Conclusion
For the foregoing reasons, there is no error in the finding by the trial court that Sybil Jane Swope is owner of an 11/25 interest in her divorced husband's military retirement income. The judgment of the trial court is affirmed. All costs of this appeal are assessed to defendant-appellant, William Joseph Mitchell, Jr.
Affirmed.
NOTES
[1] LSA-C.C. art. 2405: 
"Presumption of community as to all effects at dissolution of marriage
Art. 2405. At the time of the dissolution of the marriage, all effects which both husband and wife reciprocally possess, are presumed common effects or gains, unless it be satisfactorily proved which of such effects they brought in marriage, or which have been given them separately, or which they have respectively inherited."
[2] LSA-R.S. 1:54:

"Residence; forfeiture
Residence once acquired shall not be forfeited by absence on business of the state or of the United States. Voluntary absence from the state of two years, or the acquisition of residence elsewhere, shall forfeit a residence within this state."
[3] LSA-C.C. art. 46:

"Absence from state; forfeiture of domicile
Art. 46. Domicile once acquired shall not be forfeited by absence on business of the State or of the United States, but a voluntary absence of two years from the State, or the acquisition of residence in any other State of this Union, or elsewhere, shall forfeit a domicile within this State."