457 So.2d 1285 (1984)
Hoover J. MOREAU, Plaintiff-Appellant,
v.
Vera Ann Passiglia MOREAU, Defendant-Appellee.
No. 83-908.
Court of Appeal of Louisiana, Third Circuit.
October 10, 1984.
*1286 Provosty, Sadler & deLaunay, H. Brenner Sadler, Alexandria, for plaintiff-appellant.
Stafford, Stewart & Potter, Russell L. Potter, Alexandria, for defendant-appellee.
Before FORET, STOKER and KNOLL, JJ.
KNOLL, Judge.
Hoover J. Moreau appeals a judgment awarding his former wife, Vera Ann Moreau, 26% of his military retirement benefits. The central issue is whether the husband's military retirement benefits constitute community property. Germane to this issue is whether the trial court erred in: (1) finding Hoover Moreau was a resident and domiciliary of Louisiana, and (2) finding the parties ever established a matrimonial domicile in Louisiana while Hoover Moreau was in the service. Hoover Moreau claims the trial court further erred in not giving full force and effect to a community property settlement the parties had previously executed. Vera Moreau answered the appeal, claiming that she is entitled to 50% of the disposable military retirement benefits. We amend and affirm, finding the military retirement benefits constitute community property, and increase Vera Moreau's portion to 35.63%.

*1287 FACTS
Hoover Moreau was born in Opelousas, Louisiana on January 13, 1929. He entered the United States Air Force in November 1946 while he was living in Louisiana. He made a career of the service and remained in the Air Force until his retirement on August 1, 1968. He married Vera in St. Louis, Missouri on February 14, 1953, while stationed in Kansas City, Missouri. They remained in Kansas City until 1956. From then until his retirement in 1968, he was transferred to various states, Europe and the Philippines.
Shortly after his retirement, he moved his family to Alexandria, Louisiana, where he bought a home. On September 1, 1968, he began receiving his monthly retirement checks.
Hoover and Vera began having marital problems in 1981 which ultimately resulted in a legal separation in Rapides Parish. On March 9, 1982, they entered into a community property settlement; Hoover's military retirement was not mentioned in the settlement.
Hoover subsequently filed for a divorce based upon their living separate and apart for more than one year. Vera filed a general denial answer asserting that the military retirement benefits constituted community property, and reconvened seeking one-half interest in all future military retirement benefits Hoover might receive. The trial court granted the divorce on June 21, 1983. That judgment is final and has not been appealed. Only that portion of the judgment concerning the military retirement benefits is on appeal.

MILITARY RETIREMENT BENEFITS
Hoover contends that since he lived outside of Louisiana during his years of service, his military retirement benefits do not fall under Louisiana community property laws. He claims that the case sub judice is exclusively determined by the following Civil Code Articles:
2399"Every marriage contracted in this State, superinduces of right partnership or community of acquets or gains, if there be no stipulation to the contrary."
2400"All property acquired in this State by non-resident married persons, whether the title thereto be in the name of either the husband or wife, or in their joint names, shall be subject to the same provisions of law which regulate the community of acquets and gains between citizens of this State."
2401"A marriage, contracted out of this State, between persons who afterwards come here to live, is also subjected to community of acquets, with respect to such property as is acquired after their arrival."
Hoover argues that since Articles 2399, 2400, and 2401 do not apply to his set of circumstances, his military retirement benefits do not fall under Louisiana community property laws. We disagree.
Louisiana jurisprudence has established that vested retirement benefits, attributable to employment during marriage, constitute a community asset and this rule includes military retirement. Swope v. Mitchell, 324 So.2d 461 (La.App. 3rd Cir. 1975). In accord see Rohring v. Rohring, 441 So.2d 485 (La.App. 2nd Cir.1983). Although McCarty v. McCarty, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), held federal military retirement benefits the separate property of the retired member, Pub.L. 97-252, Title X, § 1002(a), 10 U.S. C.A. § 1408(c)(1), effective February 1, 1983, legislatively overruled McCarty; this act provided that a court may treat military retirement pay either as property solely of the retired member, or as property of the member and his spouse in accordance with applicable state law. Jett v. Jett, 449 So.2d 557 (La.App. 1st Cir.1984); Rohring, supra.
Louisiana law and jurisprudence presume a community of acquets and gains exists unless it is satisfactorily proved otherwise. LSA-C.C. Art. 2405 provides:

"At the time of the dissolution of the marriage, all effects which both husband and wife reciprocally possess, are presumed common effects or gains, unless *1288 it be satisfactorily proved which of such effects they brought in marriage, or which have been given them separately, or which they have respectively inherited."

Hoover's right to retirement pay was acquired during the marriage and is presumed to be community property in the absence of strong proof to the contrary. Swope, supra. We find that Hoover has failed to overcome this presumption.
Although Hoover lived outside of Louisiana while he acquired retirement benefits, his domicile and residence remained in Louisiana.
LSA-C.C. Art. 46 provides:

"Domicile once acquired shall not be forfeited by absence on business of the State or of the United States, ...."
LSA-R.S. 1:54 provides:

"Residence once acquired shall not be forfeited by absence on business of the state or of the United States ...."
See also Spring v. Spring, 210 La. 576, 27 So.2d 358 (1946). Further, under Louisiana law, LSA-C.C. Art. 39, "A married woman has no other domicile than that of her husband; ...." Therefore, Hoover and Vera were domiciled in and residents of Louisiana while Hoover was in the service.
Hoover maintained continuous contact with Louisiana during the period of his military service. While he was stationed at Keesler Air Force Base in Mississippi, Vera and their children lived in an apartment in Opelousas; Hoover commuted to Opelousas almost every weekend during this assignment to be with his family. He registered two vehicles in Louisiana while he was stationed in other states. The Air Force paid his travel expenses to his home town, Opelousas. He spent a substantial portion of his thirty day leave each year in Opelousas. Approximately twenty-two years ago he petitioned a Louisiana court for a change of name. He did not acquire immovable property or register to vote outside of Louisiana.
Upon his retirement, Hoover and his family moved to Alexandria, Louisiana, where both parties are domiciled to the present date. Since the parties had Louisiana domicile and residency, returned to Louisiana after Hoover's retirement, and were divorced in a Louisiana court, we conclude that they regarded Louisiana as their permanent home and domicile. Therefore, Hoover's military retirement benefits are clearly an asset of the community of acquets and gains. In accord see Succession of McKenna, 23 La.Ann. 369 (1871).
The trial court concluded that Hoover and Vera became subject to Louisiana community property laws in 1957, when Vera and the children lived in Opelousas, and awarded Vera one-half of the retirement benefits from 1957 to 1968, or 26%. We agree with the learned trial judge that the military retirement benefits constitute community property, but we find that the community regime commenced when Hoover married Vera in 1953. Therefore, under Simmons v. Simmons, 453 So.2d 631 (La.App. 3rd Cir.1984), Vera's interest should be calculated from the date of marriage as follows:
Portion of pension attributable
to creditable service during
existence of community × ½ × annuity
--------------------------------
Pension attributable to total (or lump
creditable service sum payment)
Hoover was in the military approximately 21.75 years; during that time he was married to Vera approximately 15.5 years, therefore, Vera is entitled to receive 35.63% as her community property portion of the military retirement benefits.

COMMUNITY PROPERTY SETTLEMENT
Hoover and Vera entered into a community property settlement; however, the document did not mention the military retirement benefits. Hoover contends that Vera waived her right to seek these retirement benefits since the settlement contained the following language:

"As a result of the transfers and agreements made herein, the parties hereby mutually discharge each other from any further accountings of the community *1289 which formerly existed between them, the same being fully liquidated as above set forth."

The undisputed trial testimony revealed that counsel for both Hoover and Vera conducted extensive negotiations preceding the finalization of the community property agreement. Hoover's retirement pay was known to both parties, but both thought the retirement pay was controlled by the McCarty decision, and was, therefore, Hoover's separate property.
There is no language in the partition agreement which would transfer Vera's interest in Hoover's retirement. Accordingly, each spouse continued as owner of one-half the value of the right to share retirement benefits in the proportions established in T.L. James & Co., Inc. v. Montgomery, 332 So.2d 834 (La.1976).
Under LSA-C.C. Art. 1308 all persons who hold property in common may seek a partition. The mere omission of a thing from the partition is not a ground for rescission, but simply for a supplementary partition. LSA-C.C. Art. 1401. Succession of Tucker, 445 So.2d 510 (La.App. 3rd Cir.1984), writ denied, 447 So.2d 1077.
This identical issue was addressed by this court in Moon v. Moon, 345 So.2d 168 (La.App. 3rd Cir.1977), writ denied, 347 So.2d 250. In Moon the parties entered into a community property settlement after their legal separation. Even though the parties were aware of the husband's military retirement, they omitted the retirement pay from the agreement because they thought it was the husband's separate property. This court held that notwithstanding the residual disposition clause contained in the settlement, the parties' omission of the husband's military retirement constituted mutual oversight, allowed the parties to supplement their community property settlement, and awarded the wife one-half of the community property portion of the husband's military retirement. We therefore find that Vera was not precluded from filing a supplemental partition.
For the foregoing reasons, the judgment of the trial court is amended to recognize Vera Ann Passiglia Moreau as owner of a 35.63% interest in her divorced husband's military retirement benefits. In all other respects the judgment is affirmed. All costs of this appeal are assessed equally between Hoover J. Moreau and Vera Ann Passiglia Moreau.
AMENDED AND AFFIRMED.
FORET, J., concurs.
STOKER, J., concurs and assigns written reasons.
STOKER, Judge, concurring.
I fully concur in the majority opinion and add these comments to answer what I perceive to be the thrust of the argument of the husband in this appeal.
As the majority opinion points out, this Court of Appeal held in Swope v. Mitchell, 324 So.2d 461 (La.App. 3rd Cir.1975) that military retirement benefits attributable to employment in military service during marriage was acquired as a community asset. Based upon a finding that the parties were domiciled in Louisiana during the period in question, the court held that the fact that a portion of the husband's retirement benefits was earned during residence in non-community states, did not stamp as separate property the retirement benefits earned in those states. This decision was handed down prior to the United States Supreme Court's decision in McCarty v. McCarty, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981). In view of the congressional action taken to avoid the consequences of the McCarty decision, Swope v. Mitchell, supra, is valid and applicable here.
The husband postulates: "The property, being an intangible movable item, was acquired at the place the military services were rendered, which was never Louisiana." (Husband's Reply Brief, page 3) This statement is made in the context of the argument that classification of Moreau's retirement rights as community is contrary to the provisions of Louisiana Civil *1290 Code Articles 2399, 2400 and 2401 and that Article 2334 cannot be applied because to do so would give it retroactive effect. The appellant husband wishes to use defensively Articles 2399, 2400 and 2401 and the nonapplicability of Article 2334 for any time prior to its enactment in 1980. They cannot be so used.
Military retirement rights are movable property. Any such rights acquired during defendant's marriage to the plaintiff became community property because the parties were Louisiana domiciliaries. The law of the residence at the time of acquisition does not govern. Succession of Lodato, 250 So.2d 792 (La.App. 4th Cir.1971); Succession of Dunham, 408 So.2d 888 (La. 1981) and Jackson v. Jackson, 425 So.2d 379 (La.App. 3rd Cir.1982). Under the circumstances our decision is not contrary to the cited Civil Code articles and we do not apply Article 2334 retroactively. With respect to the latter article, it is not a consideration and we apply the law as it was decided in Swope v. Mitchell, supra, well before the amendment of Article 2334. The other citations given above do not involve application of the present version of Article 2334, but stand on their own merits.