513 So.2d 464 (1987)
Wayne Rebecca Eastman LITTLE, Appellee,
v.
Bill Doo LITTLE, Appellant.
No. 18932-CA.
Court of Appeal of Louisiana, Second Circuit.
September 23, 1987.
*465 Edward Larvadain, Jr., Alexandria, for appellant.
Love, Rigby, Dehan, Love & McDaniel by William G. Nader, Shreveport, for appellee.
Before MARVIN, JASPER E. JONES and FRED W. JONES, Jr., JJ.
FRED W. JONES, Jr., Judge.
A husband, on active duty with the U.S. Air Force, and his wife were legally separated in 1963 in Bossier Parish, where they were subsequently divorced in 1964. In 1984 the wife, a resident of Texas, sued the husband, a resident of England, in Bossier Parish to partition the defendant's military retirement pay.
Judgment was rendered in favor of the plaintiff wife decreeing her entitlement to a specified portion of the retirement pay beginning June 25, 1981. The defendant appealed, asserting the trial judge erred in 1) ruling it had jurisdiction to hear the case and 2) ruling that the military retirement pay being received by defendant was property of the community which had existed between the parties and was, consequently, subject to division in accordance with Louisiana community property law.
Plaintiff neither appealed nor answered the appeal.
For the reasons hereinafter explained, we affirm.
Factual Context and Procedural History
Bill Doo Little became a member of the U.S. Air Force in 1945. While a domiciliary of Texas he married Wayne Rebecca Eastman Little in 1954. During the legal separation and divorce proceedings in Bossier Parish in 1963 and 1964, initiated by Mrs. Little, personal service was made upon the defendant husband. No mention was made of defendant's military retirement benefits in either proceeding.
After the divorce Mrs. Little moved to Texas where she has resided since 1965. Little retired from the Air Force in 1969. For the last 20 years he has resided in England.
At the trial the parties stipulated that 20 years of active duty in the military or reserve service is necessary to obtain retirement benefits. It was also stipulated that defendant was not entitled to receive military retirement benefits at the time of the *466 legal separation and divorce because he had not yet performed the required 20 years service; that, due to this, the retirement benefits had neither matured nor vested at that time; and that when defendant became entitled to receive the benefits, the parties were divorced.
In response to the suit for partition, defendant filed peremptory exceptions of no cause of action and no right of action, both of which were overruled. The defendant then filed an exception of lack of personal jurisdiction, which was also subsequently overruled. An answer to the suit was filed.
In written reasons for judgment, the trial court first addressed defendant's contention that he was domiciled in South Carolina when he entered military service. It was pointed out that, according to the evidence, prior to this marriage defendant had filed suit for divorce in Texas in 1951 and alleged he had resided in Texas for more than 12 months. He filed another suit for divorce in Texas in 1952 and asserted he was a permanent resident of Texas (though temporarily stationed in Alaska) and that he intended to return to Texas. The trial court concluded defendant was domiciled in Texas at the time of his marriage to plaintiff and this status continued throughout defendant's military career.
The trial court next addressed defendant's argument that plaintiff was not entitled to any portion of the military retirement benefits because they were not vested at the time of their divorce in 1964. Noting the absence of Louisiana authority cited by defendant to support his position, the trial judge ruled that vesting is not a requirement for recovery of retirement benefits by the wife and awarded her a portion thereof. Considering the total military service of 23 years 11 months, and the 9 years 2 months during which the community was in existence, plaintiff's portion of the retirement benefits was calculated to be ½ of 38%, or 19%. Consequently, she was held entitled to 19% of all retirement benefits paid since June 29, 1981[*] and 19% of all future payments.
Jurisdictional Issue
We note first that defendant waived any objection to jurisdiction in the partition proceeding when he filed the exceptions of no cause of action and no right of action. Since this was the seeking of relief other than that allowed by La.C.C.P. Art. 7, it was a general appearance which waived all declinatory exceptions except subject matter jurisdiction. La.C.C.P. Art. 925.
Be that as it may, we also find that the trial court had personal jurisdiction under the doctrine of "continuing jurisdiction".
Gowins v. Gowins, 466 So.2d 32 (La.1985), cited by both parties, held that since a Louisiana court had personal jurisdiction over a husband in the dissolution of his marriage, that jurisdiction continued for the related proceeding to distribute the husband's military retirement pay.
Defendant concedes the existence of this doctrine of continuing jurisdiction, but nevertheless asserts that the lower court erred in taking jurisdiction since both parties left Louisiana after their divorce some twenty years ago and have had no further contact with the state since then. The argument seems to be that in order for a court to exercise continuing jurisdiction at least one of the former litigants must be either currently residing, present, or domiciled in the state. It is also implied in the specification of error that the twenty year *467 gap between the two proceedings precludes the application of this doctrine. No authority was cited to support these contentions.
The court in Gowins relied on Imperial v. Hardy, 302 So.2d 5 (La.1974) and Michigan Trust v. Ferry, 228 U.S. 346, 33 S.Ct. 550, 57 L.Ed. 867 (1913), cases which also stand for the proposition that once a court obtains jurisdiction, it retains that jurisdiction over matters connected with the initial proceeding, and has the power to bind the parties. These cases also involved absent defendants who objected to the court's exercise of jurisdiction over their persons. As Justice Holmes explains in Michigan Trust, supra:
"Ordinarily jurisdiction over a person is based on the power of the sovereign asserting it to seize that person and imprison him to await the sovereign's pleasure. But when that power exists and is asserted by service at the beginning of a cause, or if the party submits to the jurisdiction in whatever form may be required, we dispense with the necessity of maintaining the physical power, and attribute the same force to the judgment or decree whether the party remain within the jurisdiction or not. This is one of the decencies of civilization that no one would dispute. It applies to Article 4, § 1, of the Constitution, so that if a judicial proceeding is begun with jurisdiction over the person of the party concerned, it is within the power of a state to bind him by every subsequent order in the cause." Michigan Trust, supra, 33 S.Ct. at 552.
There is no question that the Bossier Parish court had personal jurisdiction over defendant in the proceeding to dissolve his marriage. He submitted to the jurisdiction of that court by answering both petitions and personally accepting service of Mrs. Little's divorce petition. These actions conferred jurisdiction upon the court through consent, as they constituted general appearances which waived all objections to jurisdiction. La.C.C.P. Arts. 6(3) and 7.
While it is true that the moving party (wife) in Gowins was domiciled in Louisiana when she filed her ancillary proceeding to partition her ex-husband's military retirement pay in Rapides Parish, this fact was neither the basis of, nor essential to, the court's holding. As Justice Lemmon's concurrence in Gowins makes clear, it is the nature of the proceeding, rather than anything about a party, that is determinative of continuing jurisdiction. Once jurisdiction attaches, it continues throughout the entire proceeding, including any additional actions which are "essential concomitant[s]" of the original one. Gowins, supra, at 37 (J. Lemmon, concurring). Therefore, since the dissolution of the community gives rise to the action for dividing and distributing the community property, it is "... within the scope of the jurisdiction originally conferred." Id.
Parrish v. Parrish, 448 So.2d 804 (La.App. 2d Cir.1984), held that a trial court with an independent jurisdictional basis to decide a child custody issue raised in a separation proceeding had continuing jurisdiction over the custody issue raised again in the divorce proceeding, even though the child had by that time been removed from the state. Stevens v. Stevens, 476 So.2d 883 (La.App. 2d Cir.1985), writ denied, 478 So.2d 908 (La.1985), ruled an action by a wife to enforce a community property agreement was within the scope of original jurisdiction obtained by the trial court in the divorce proceeding, despite the fact that the husband had since become a Texas domiciliary.
We conclude, therefore, the trial judge correctly ruled it had personal jurisdiction over the defendant in this partition suit.
Classification of the Military Retirement Pay
Defendant's argument is that his former wife is not entitled to any portion of the military retirement benefits he is now receiving because at the time the community between them terminated he had not yet served the required 20 years of military service or retired, and thus the benefits were neither vested nor matured.
The issue of whether military retirement pay, which is neither vested nor matured at the time of dissolution of a marriage, is properly classified as community property *468 and subject to division in accordance with Louisiana community property law has not been specifically addressed in this state. Military retirement benefits vesting and maturing during marriage are clearly community property in Louisiana. See, for example: Rose v. Rose, 483 So.2d 181 (La.App. 2d Cir.1986), writ denied, 484 So.2d 665 (La.1986); Rohring v. Rohring, 441 So.2d 485 (La.App. 2d Cir.1983); Jett v. Jett, 449 So.2d 557 (La.App. 1st Cir.1984), writ denied, 458 So.2d 473 (La.1984), U.S. cert. denied, 471 U.S. 1054, 105 S.Ct. 2115, 85 L.Ed.2d 479 (1985); Moreau v. Moreau, 457 So.2d 1285 (La.App. 3rd Cir.1984); Moon v. Moon, 345 So.2d 168 (La.App. 3rd Cir.1977), writ denied, 347 So.2d 250 (La.1977); Swope v. Mitchell, 324 So.2d 461 (La.App. 3rd Cir.1975); and Inzinna v. Inzinna, 456 So.2d 691 (La.App. 5th Cir.1984), writ denied, 461 So.2d 317 (La.1984).
None of these cases involved situations in which the dissolution of the community preceded the retirement or vesting of the benefits (the point in time at which the employed spouse acquired a non-forfeitable right to them) as in the case at bar. Louisiana cases have treated other types of contingent rights as community property subject to division upon dissolution of the community; and several cases have held that vested, though unmatured, benefits of deferred compensation plans are assets of the community.
The Louisiana Supreme Court has held that obligations based upon the right to receive money to become due in the future are community assets, even though they may be contingent upon the happening of an event at a future and uncertain time. In Due v. Due, 342 So.2d 161 (La.1977), a husbandattorney's interest in a pending contingent fee contract was held to constitute a patrimonial asset which, if acquired during the marriage, fell into the community to the extent its value was based on services performed during the community. Rejecting the husband's claim that the aleatory and indeterminate nature of the right precluded it from being classified as community property, the court stated that the Louisiana Civil Code articles intend for all property, in the broad sense of the word, to form part of the community if acquired during marriage. Since property or patrimonal rights are those which are "susceptible of pecuniary evaluation" (Yiannopulous, Louisiana Civil Law Treatise, Vol. 2, § 70, p. 243 [1971]), and rights under a contingency fee contract clearly have pecuniary value, the court found that their aleatory nature had no bearing on whether or not they were community property and held the wife entitled to recognition of her share of the interest. Not decided was when she would be allowed to collect her part.
Applying this same rationale was the case of Messersmith v. Messersmith, 229 La. 495, 86 So.2d 169 (1956), upon which the court in Due relied. In Messersmith, supra, the supreme court held a group annuity certificate of the husband's retirement plan a community asset, despite the fact that on the date of the dissolution of the community it had no cash or loan value and would have none except upon the husband's resignation, retirement, or death. Finding that it was property acquired during the existence of the community, the court stated that it was irrelevant whether it had a present cash value, if it would necessarily become payable in the future. This was true, said the court, even though the date it would have a value was uncertain. Messersmith, supra, 86 So.2d at 174.
Thus the fact that defendant had not retired on the date of dissolution of the community or marriage makes no difference. Other more recent Louisiana cases have held an ex-spouse entitled to recognition of his or her interest in pension or retirement plans upon dissolution of the community, with payments to be received when they become due and payable. See, for example, Lynch v. Lawrence, 293 So.2d 598 (La.App. 4th Cir.1974), writ denied, 295 So.2d 814 (La.1974), which confirmed a wife's right to receive a portion of her husband's vested right in a pension plan with South Central Bell, when he commenced drawing it, which was attributable to his employment during the community. The court rejected the husband's argument *469 that his pension was a "gratuity" and established that these benefits represent a "fringe benefit" or deferred compensation of employment. See also Lafitte v. Lafitte, 253 So.2d 120 (La.App. 2d Cir.1971), allowing a wife to share in her husband's vested but unmatured interest in a contributory profit-sharing plan for that period of his employment during which a community regime existed.
In T.L. James & Co., Inc. v. Montgomery, 332 So.2d 834 (La.1976), an employer provoked a concursus proceeding against the widow and heirs of the employee for distribution of proceeds from his profit-sharing and retirement plan and insurance policy. This case held that since the proceeds of the profit-sharing and retirement plan were "earned income" of the husband falling into the community, the wife was entitled to that portion which vested after the marriage. It also held, citing Messersmith, supra, that restrictive provisions in corporate charters, and by analogy profit-sharing and retirement plans, "cannot negative the wife's present interest as co-owner". Messersmith, supra, 86 So.2d at 173.
While these cases involved benefits which vested by the date of termination of the community, there is strong support by implication for the classification of unvested benefits as community property in the Louisiana Supreme Court case of Sims v. Sims, 358 So.2d 919 (La.1978). There, a former wife brought suit to partition the community assets after dissolution. At issue was her share of her husband's statutorily created federal pension rights.
In order to be entitled to receive benefits, an employee had to have at least 5 years credited service or be 62 years old, or 20 years of service and be 50 years old upon leaving service. A third alternative available was to obtain a refund of contributions made by him but not by his employer. When the community terminated, the defendant had 19 years 5 months credited service and was 10 months short of age 50. Thus he was not eligible to retire at that time and receive immediate benefits. Since he had not yet completed 20 years of service, he was not eligible to retire and receive benefits until he was 62 years of age. He was only eligible to receive immediate benefits upon completion of 20 years service and reaching 50 years of age. This would not be for another 11 years and 5 months.
While Justice Tate did not discuss "vesting", the fact that Sims was not eligible to begin receiving payments at the time of the dissolution of his marriage makes his situation much closer to Little's than any of the parties in the cases holding vested interests to be community assets. In spite of this, the court held that Sims' right to receive the benefits was community property to the extent these benefits were attributable to his employment during the community, and recognized his ex-wife's proportionate interest in them, if and when they became payable.
By holding that the right to these pension payments, which arguably had not "vested", at divorce, (at least not completely) was nevertheless a community asset subject to division between spouses if and when the benefits became payable, the supreme court strongly implies that vesting is not a requirement for an ex-wife's recovery.
While the retirement plan in Sims is distinguishable from Little's in that Sims made employee contributions to the pension, the court did not restrict the applicability of its decision to plans in which employee contributions are made with funds of the community. Extending the holding in T.L. James & Co., Inc., supra, that matching contributions of an employer represent an asset acquired by community earning and effort, the court stated that the community interest in deferred compensation plans stems not only from community contributions, but also from any right to receive proceeds attributable to employment during the community.
The court also quoted with approval the following language from T.L. James & Co.:
"When acquired during the existence of a marriage, the right-to-share [in a retirement plan] is a community asset which, at the dissolution of the community, must be so classifiedeven though at *470 the time acquired or at the time of dissolution of a community, the right has no marketable or redeemable cash value, and even though the contractual right to receive money or other benefits is due in the future and is contingent upon the happening of an event at an uncertain time." Sims, supra, at 922 (quoting T.L. James & Co., supra at 851).
Noting that the weight of Louisiana authority is to the effect that at dissolution, the non-employed spouse is entitled to recognition of an interest in proceeds from a deferred compensation plan when they become payable, it expressly disapproved (and overruled insofar as it is inconsistent with its holding) the case of Langlinais v. David, 289 So.2d 343 (La.App. 3rd Cir.1974), which had rejected a wife's claim for a share of her husband's retirement benefits, since he had not retired at the date of the dissolution of community.
The only reason to deny the wife her community interest in deferred compensation payments which are unvested, unmatured or both at the date of dissolution would be the problem of placing a value on an asset which has no present ascertainable value. Thus, the ultimate amount of benefits cannot be determined before retirement or termination of employment or service. See Le Van, Allocating Deferred Compensation in Louisiana, 38 La.L.Rev. 35 (1977).
The supreme court in Sims, supra, addressed this problem and devised a formula by which a spouse's interest in each payment ultimately made is to be determined. The formula is based on a fraction, the numerator of which is the total number of years the parties were married while the employee-spouse was employed or in service and the denominator of which is the total number of years of employment or service. This amount is community property. As owner of one-half of the community, the non-employee spouse is entitled to one-half of that portion of the monthly benefits represented by the fraction. See Sims, supra; Menard v. Menard, 460 So.2d 751 (La.App. 3rd Cir.1984).
As Professor Le Van points out, however, this formula only works when the wife (or non-employee spouse) is willing to accept his or her share "if and when received."
The problem is not present in this case. While Mrs. Little's interest in her husband's retirement pay may have been contingent and undeterminable on the date that the community terminated, it is now determinable and determined, for Little has retired and is presently drawing benefits. There is thus no reason to deny her one-half ownership interest in this asset of the former community which became hers at the time of its acquisition by defendant. (LSA-C.C. Arts. 2334, 2336); Succession of Wiener, 203 La. 649, 14 So.2d 475 (1943); Howard v. Howard, 499 So.2d 222 (La.App. 2d Cir.1986).
The wife's entitlement to military retirement benefits is determined under the law of states in which the parties were domiciled for respective periods during which the benefits accrue. Allen v. Allen, 484 So.2d 269 (La.App. 3rd Cir.1986), writ denied, 488 So.2d 199 (La.1986), U.S. cert. denied, ___ U.S. ___, 107 S.Ct. 178, 93 L.Ed.2d 114 (1986).
Defendant appears to argue that his wife is not entitled to any benefits because he was a South Carolina domiciliary when he entered the service or, alternatively, she at least is not entitled to that portion of the benefits which accrued before he became domiciled in a community property state.
The trial judge stated in his opinion that he found no evidence of defendant's establishment of a domicile in South Carolina. The record supports this conclusion. The only evidence offered regarding this is the document listing his duty stations, which shows only that he was stationed in South Carolina in February of 1956 for a period of less than one year.
The trial court thus rejected this contention and found defendant to be a Texas domiciliary throughout his military career and marriage to plaintiff. This conclusion is also supported by evidence in the record which indicates Little described himself as a "permanent resident" of Texas and as *471 intending to return to his home there (although stationed in Alaska at the time) in pleadings in two previous divorce cases.
The record is silent as to both the law of South Carolina, which defendant appears to rely upon for the classification of at least a part of the benefits, and Texas. Where the law of another state is not established, it may be presumed that the law of that state is the same as that of Louisiana. Schueler v. Schueler, 460 So.2d 1120 (La.App. 2d Cir.1984), writ denied, 464 So.2d 318 (La.1985); Rohring, supra; Allen, supra; Rose, supra.
In summary, the trial court correctly ruled that a portion of military retirement pay, which a former husband is receiving but which had not vested nor matured on the date of termination of the community or of divorce, is properly classified as community property under Louisiana law and is subject to division in accordance with Louisiana law governing matrimonial regimes.
Conclusion
For these reasons, we affirm the trial court judgment, at appellant's cost.
NOTES
[*] Although the reason for fixing this date was not explained, it apparently resulted from the trial judge's understanding of the retroactivity provision of 10 U.S.C.A. § 1408(c)(1). By this act Congress legislatively overruled the case of McCarty v. McCarty, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), which had held that federal law preempted state community property law and precluded states from dividing military nondisability pay between the spouses upon dissolution of marriage. This act was made retroactive to June 25, 1981, the date of the McCarty case. It was the intent of Congress to reverse the McCarty ruling and place state courts in the same position they were before the ruling. See Simmons v. Simmons, 453 So.2d 631 (La.App. 3rd Cir.1984). In Louisiana military retirement pay fell into the community before McCarty. However, since plaintiff has neither appealed nor answered the appeal, we do not address the correctness of this date.