453 So.2d 631 (1984)
Linda L. SIMMONS, Plaintiff-Appellee,
v.
James R. SIMMONS, Defendant-Appellant.
No. 83-758.
Court of Appeal of Louisiana, Third Circuit.
June 27, 1984.
*632 Ford & Nugent, Howard N. Nugent, Jr., Alexandria, for defendant-appellant.
Provosty, Sadler & deLaunay, F. Rae Swent, Alexandria, for plaintiff-appellee.
Before DOMENGEAUX, FORET and STOKER, JJ.
DOMENGEAUX, Judge.
This appeal arises out of a divorce proceeding. The central issue revolves around the proper allocation of a military retirement pension fund. Also at issue is the lower court's assessment of costs.
The trial court ruled the defendant-husband's retirement benefits to be community property and thus subject to the partition of the community. Costs were assessed against the defendant.
Defendant, James R. Simmons, joined the Air Force in 1956. In 1959, while in the Air Force, he married the plaintiff, Linda L. Simmons. After twenty years of service, he retired from the Air Force and began receiving retirement pay in June of 1976. On May 12, 1982, Linda Simmons filed this suit for a divorce and partition of the community. Judgment was signed on June 10, 1983, granting a divorce between the plaintiff and defendant and assessing all costs against the defendant. The judgment further declared the retirement benefits to be community property and declared the plaintiff "entitled to one-half (½) ownership of said right, in accordance with the proportionate amount of time the parties hereto were married during defendant's active military service, being seventeen of twenty years, or forty-three (43) percent of the disposable monthly pay."
Defendant pursues this appeal from the trial court's order, alleging that the trial court erred: (1) in finding the military retirement pension to be community property, and (2) in assessing all costs against him.
In Swope v. Mitchell, 324 So.2d 461 (La. App. 3rd Cir.1975), and later in Moon v. Moon, 345 So.2d 168 (La.App. 3rd Cir.1977), writ refused, 347 So.2d 250 (La.1977), this Court held that military retirement pay should be classified as community property when such asset was acquired during the existence of the community.
In Sims v. Sims, 358 So.2d 919 (La.1978), and T.L. James & Co., Inc. v. Montgomery, 332 So.2d 834 (La.1976), the Supreme Court set forth new guidelines to be followed in determining the parties' interests in deferred compensation plans. The proper method of allocation was expressed in a ratio as follows:
Portion of pension attributable to creditable
service during existence of community, × ½ ×
Pension attributable to total creditable (or lump
service sum payment)
Subsequently on June 26, 1981, the United States Supreme Court issued its opinion in McCarty v. McCarty, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), which held that military retirement benefits were not subject to a community property regime.
In McCarty the Supreme Court stated at page 2741:

*633 "In the first place, the community property interest appellee seeks `promises to diminish that portion of the benefit Congress has said should go to the retired (service member) alone.' See Hisquierdo [v. Hisquierdo], 439 U.S. [572] at 590, 99 S.Ct. [802] at 813 [59 L.Ed.2d 1]. State courts are not free to reduce the amounts that Congress has determined are necessary for the retired member."
The Court further announced that:
"[C]ongress may well decide, as it has in the Civil Service and Foreign Service contexts, that more protection should be afforded a former spouse of a retired service member. This decision, however, is for Congress alone." Id. at 235-236, 101 S.Ct. at 2743, 69 L.Ed.2d at 608.
In response to this invitation, Congress enacted the "Uniformed Services Former Spouses Protection Act", Pub.L. No. 97-252, 96 Stat. 718, 730-738 (1982). This Act became effective on February 1, 1983, and removes the federal preemption of state laws in the division of military pensions and distribution proceedings.
The key provision is sub-section (c)(1) of 10 U.S.C. § 1408. This sub-section provides:
"(c)(1) Subject to the limitations of this section, a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court."
The congressional intent in enacting the above subsection can be found in the Senate report which states:
"Congress' intent in enacting subsection (c)(1) is discussed in the Senate Report on the new law. That report states:
The purpose of this provision is to place the courts in the same position that they were in on June 26, 1981, the date of the McCarty decision, with respect to treatment of nondisability military retired or retainer pay. The provision is intended to remove the federal pre-emption found to exist by the United States Supreme Court and permit State and other courts of competent jurisdiction to apply pertinent State or other laws in determining whether military retired or retainer pay should be divisible. Nothing in this provision requires any division; it leaves that issue up to the courts applying community property, equitable distribution or other principles of marital property determination and distribution. This power is returned to the courts retroactive to June 26, 1981. This retroactive application will at least afford individuals who were divorced (or had decrees modified) during the interim period between June 26, 1981 and the effective date of this legislation the opportunity to return to the courts to take advantage of this provision.
S.Rep. No. 502, 97th Cong., 2d Sess. 16 (1982), U.S.Code Cong. & Admin.News 1982, 1555, 1611."
It is thus clear that Congress intended 10 U.S.C. § 1408 to have retrospective application in such a manner that would totally eliminate the McCarty decision and thus allow state courts to render judgments which were consistent with the decisions issued prior to the McCarty case.
While the most recent pronouncement the Louisiana Supreme Court on the status of federal military retirement benefits is contained in Dedon v. Dedon, 404 So.2d 904 (La.1981), the case presents a conflict with the jurisprudence extant prior to McCarty. The Dedon Court addressed the issue of a former wife's claim for an alleged community interest in the former husband's retirement benefits. In that case the Court specifically followed the rationale set forth in McCarty and concluded that the federal supremacy clause mandated a finding of separate property. However, the enactment of 10 U.S.C. § 1408 removed the federal preemption barrier created by McCarty and permitted State Courts to return to their own law and make their own determinations according to state property classifications.
*634 As stated earlier our state law prior to McCarty recognized the community property interest in military retirement benefits earned during the marriage. We thus hold the plaintiff, Linda L. Simmons, is entitled to have her share of the community property portion of the benefits. Such share being allocated under the formula expressed in Sims v. Sims, supra, and T.L. James Co., Inc. v. Montgomery, supra.[1]
Defendant challenges this interpretation of the retrospective application of 10 U.S.C. § 1408, contending the statute cannot be retrospectively applied because to do such would divest him of a vested right and thus violate due process.
We find no merit in defendant's contention. The retirement status for military personnel and the right to an amount of retirement benefits are controlled by statute. Legislation providing for pension or retirement systems is generally considered remedial and may be retrospectively applied. Maillet v. Board of Trustees, Teachers' Retirement System of La., 248 La. 964, 183 So.2d 321 (1966). While the retrospective aspects of all legislation must meet the test of due process, it is now well established that legislative acts adjusting the burden and benefits of economic life are presumed to be constitutional, and the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational manner. Duke Power Company v. Carolina Environmental Study Group, Inc., 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978).
The Uniform Services Former Spouses Protection Act is not arbitrary and irrational. The congressional purpose in enacting the Act was to provide economic protection and assistance to a particular disadvantaged group. To achieve this end, Congress eliminated the effect of McCarty and also amended various sections of Title 10, U.S.C. to increase the benefits available under the survivor benefit plan, Section 1448, to add new medical benefits, Sections 1072, 1076, and 1086, and to provide for commissary and exchange privileges by regulations. At the same time, Congress restricted the availability of certain benefits to those who had been service spouses for less than ten years, Section 1408(d). In order to effectuate its purpose yet moderate the impact of new provisions, Congress devised a particular scheme to include both prospective and retrospective operation for the statute. Section 1006.
Considering the overall statutory scheme and the provisions discussed above, it is evident that Congress gave particular consideration to the past regulation of military retirement pay and the public policy underlying state judgments, before giving retrospective application to any portion of the Act. The Act strikes a reasonable balance between competing economic interest and the reasonable expectations of the parties concerned. Thus, retroactive application of 10 U.S.C. Section 1408(c)(1) does not constitute a denial of due process and no vested rights have been impaired.
We hold that the trial court's interpretation of the Act is correct and note that it is in accord with the result reached by our Brethren in the Second Circuit as well as in other state court jurisdictions. See Rohring v. Rohring, 441 So.2d 485 (La.App. 2nd Cir.1983). See also Steczo v. Steczo, 135 Ariz. 199, 659 P.2d 1344 (App.Div. 1, 1983). Cameron v. Cameron, 641 S.W.2d 210 (Tx. 1982); In re Marriage of Frederick, 141 Cal.App.3d 876, 190 Cal.Rptr. 588 (1983).
*635 Lastly defendant contends the trial court was in error in assessing all costs against him individually. We find merit in this argument and accordingly reverse the trial court's judgment insofar as it assessed all costs against defendant.
La.C.C. Art. 159 provides:
"The effects of a divorce shall not only be the same as are determined in the case of a separation from bed and board, but it shall also dissolve forever the bonds of matrimony, between the parties, and place them in the same situation with respect to each other as if no marriage had ever been contracted between them.

If a community property regime exists on the date of filing of the original petition in the action in which the judgment of divorce is rendered, the judgment of divorce carries with it the dissolution of the community, which dissolution is retroactive to the date on which the original petition in the action was filed, but such retroactive effect shall be without prejudice (a) to the liability of the community for the attorney fees and costs incurred by a spouse in the action in which the judgment is rendered, or (b) to rights validly acquired in the interim between commencement of the action and recordation of the judgment." (Emphasis added.)
Because there had been no judicial separation, the community property regime still existed at the time the divorce was applied for. Malone v. Malone, 260 La. 759 257 So.2d 397 (La.1972). Thus under the clear wording of the code provision the community would be liable for the costs incurred in the divorce action in which the judgment was rendered. In Palmatier v. Palmatier, 394 So.2d 731, 733 (La.App. 3rd Cir.1981), this Court discussed the issue of attorney's fees incident to a divorce judgment:
"The second paragraph of Article 159, quoted above, makes it clear that if a community exists on the date the petition for divorce is filed, the judgment of divorce dissolves the community retroactive to the date the petition was filed, but without prejudice to the rights of either the wife or the husband to claim from the community attorney's fees incurred in the divorce action."
The Palmatier case provides an analogous issue to the instant case. La.C.C. Art. 159 refers to both "attorney's fees and costs," and therefor, we conclude that the above reasoning from Palmatier applies to both court costs and attorney's fees; the community is liable for both under La.C.C. Art. 159.
For the above and foregoing reasons the judgment of the trial court is reversed insofar as it assessed all costs against the defendant. In all other respects it is affirmed. Costs at trial and on appeal are to be paid from the community of acquets and gains between the parties.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
NOTES
[1] That ratio is expressed as follows:
 17 years attributable to creditable service
 during existence of community × ½ × annuity or lump
 20 years attributable to total creditable sum payment
 service
 or
 .43 × annuity or lump sum payment