602 So.2d 1139 (1992)
Brenda M. DUNHAM
v.
John M. DUNHAM.
No. 91 CW 1660.
Court of Appeal of Louisiana, First Circuit.
June 29, 1992.
Writ Denied October 30, 1992.
D. Blayne Honeycutt, Denham Springs, for Brenda M. Dunham.
John McLindon, Baton Rouge, for John M. Dunham.
Before WATKINS, CARTER and FOIL, JJ.
WATKINS, Judge.
We granted writs in this civil suit to determine whether the trial court erred in *1140 denying an ex-husband's exception of no cause of action in a proceeding to partition military retirement pay. Because we must apply federal statutory law as it exists today, we reverse.
On February 23, 1990, Brenda M. Dunham filed a petition for supplemental partition of community property. She alleged the following: that she and John Dunham were married on August 12, 1959; that they were divorced on January 17, 1974; that on the same date, they entered into a "Settlement of Community" purporting to partition all of the community property they had acquired during their marriage; that they had acquired during their marriage certain community property which was omitted from their "Settlement of Community"; that she no longer desired to be an undivided interest owner in the property; and that she and the defendant had been unable to agree on a partition. Her partition action was brought pursuant to LSA-R.S. 9:2801.
The property referred to in the plaintiff's petition was a percentage of the retirement pay presently being received by John Dunham because of his former service with the United States Army, which service partially occurred during the marriage. The document entitled "Settlement of Community," which was executed by the two parties before a notary and two witnesses, divided the assets and debts of the community between John and Brenda Dunham. The settlement concluded with the following language: "As a result hereof, the parties hereto discharge each other from any further accounting to each other as to the community which formerly existed between them, all claims against the community and against each other being fully liquidated and settled herein."
John Dunham answered the petition for supplemental partition on July 3, 1990. He alleged that the military retirement benefits were neither community property nor the property of either Brenda or John at the time of the community property settlement because the right to the retirement benefits had not vested or matured until he completed his military service in 1980, six years after his divorce. He denied that he and Brenda had discussed the retirement benefits, alleging that at the time of the settlement neither Brenda nor her attorney inquired about his potential to receive the benefits. He further alleged that the plaintiff had not requested any information about the benefits when he began receiving them. The defendant also pled the affirmative defenses of equitable estoppel, laches, prescription, and res judicata.
Brenda Dunham filed a motion for summary judgment in the instant suit, and John Dunham responded with an exception of no cause of action. Attached to the motion for summary judgment were several exhibits, such as Brenda Dunham's affidavit stating that she and John never discussed his retirement benefits during the negotiations that preceded the settlement agreement. The district court judge denied the motion for summary judgment and overruled the exception of no cause of action. Both parties filed motions for reconsideration and/or new trial, which motions another district court judge denied.
The defendant, John Dunham, sought writs to this court alleging that the trial judge erred in overruling his exception of no cause of action. The crux of his argument is that 10 U.S.C. § 1408(c)(1) as it is written today precludes his former wife from receiving any of his military retirement pay. The present statute reads as follows:
(c) Authority for court to treat retired pay as property of the member and spouse.  (1) Subject to the limitations of this section, a court may treat disposable retired pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court. A court may not treat retired pay as property in any proceeding to divide or partition any amount of retired pay of a member as the property of the member and the member's spouse or former spouse if a final decree of divorce, dissolution, annulment, or legal separation (including a *1141 court ordered, ratified, or approved property settlement incident to such decree) affecting the member and the member's spouse or former spouse (A) was issued before June 25, 1981, and (B) did not treat (or reserve jurisdiction to treat) any amount of retired pay of the member as property of the member and the member's spouse or former spouse. (Underlining supplied.)
Section 1408(c)(1) was amended on November 5, 1990, when Congress added the second sentence, which is underlined above. According to Section 555(e) of Pub.L. 101-510, "The amendment made by subsection (a) [amending subsec. (c)(1) of this section] shall apply with respect to judgments issued before, on or after the date of the enactment of this Act." To avoid an impermissible effect upon vested rights, Congress included a savings clause in Section 555(e), as follows: "In the case of a judgment issued before the date of the enactment of this Act [Nov. 5, 1990], such amendment shall not relieve any obligation, otherwise valid, to make a payment that is due to be made before the end of the two year period beginning on the date of the enactment of this Act."
As defendant points out, the savings clause does not apply to the plaintiff's suit for supplemental partition because no judgment was rendered in the suit prior to the enactment of the 1990 amendment.[1] Thus, the amendment is pertinent to the instant case.
The defendant argues that under the second sentence of Section 1408(c)(1), his military retirement pay cannot be treated as community property because his divorce judgment was rendered and his community property settlement was executed prior to June 25, 1981, and the judgment and settlement do not treat or reserve jurisdiction to treat the retirement pay as community property.
To understand the problems which precipitated the amendment to Section 1408(c)(1), it is necessary to trace the jurisprudence dealing with the division of military pensions. In Louisiana, as well as in other community property states, the case law prior to 1981 provided that military retirement benefits were classified as community property and were apportioned accordingly. Swope v. Mitchell, 324 So.2d 461 (La.App. 3d Cir.1975); Moon v. Moon, 345 So.2d 168 (La.App. 3d Cir.), writ denied, 347 So.2d 250 (La.1977). This remained the rule until June 26, 1981, when the United States Supreme Court held that federal law precluded a state court from dividing military nondisability retirement pay pursuant to state community property laws. McCarty v. McCarty, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981). The McCarty case reached the United States Supreme Court via the courts of California, a community property state. The appellant was a Regular Army Colonel who filed a petition for dissolution of his marriage to appellee. At the time, he had served 18 of the 20 years required for retirement with pay. Under California law, each spouse, upon dissolution of a marriage, had an equal and absolute right to a half interest in all community and quasi-community property, but retained his or her separate property. The California courts held that *1142 the military retirement benefits were quasicommunity property.
The United States Supreme Court concluded otherwise. The Court concluded that the application of state community property law conflicted with the federal military retirement scheme regardless of whether retirement pay was defined as "current" or as "deferred" compensation. Thus, according to McCarty, military retirement benefits were separate, not community, property. The Court noted that military retirement pay differs in some significant respects from a typical pension or retirement plan. The Court analyzed the pertinent provisions of the United States Code providing for military pensions and concluded that the military retirement system confers no entitlement to retirement pay upon the retired service member's spouse. The Court held that the military retirement system did not embody even a "limited community property concept," but that Congress had stated explicitly that military retirement pay was a "personal entitlement" of the retired member.
The Supreme Court further specified that the application of community property principles to military retirement pay threatened grave harm to clear and substantial federal interests. The community property division of retirement pay, by reducing the amounts that Congress had determined were necessary for the retired member, had the potential to frustrate the congressional objective of providing for the retired service member.
The Louisiana Supreme Court acknowledged that McCarty was controlling in Louisiana partition cases. In Dedon v. Dedon, 404 So.2d 904 (La.1981), a former wife who was married in 1952 and divorced in 1974 was denied an interest in her former husband's military retirement pay because of federal preemption.
However, in McCarty the United States Supreme Court noted that Congress could pass appropriate legislation which would indicate a congressional intent not to preempt state law and to allow military pensions to be treated by the states as they would be treated but for federal preemption. The Court stated, "(C)ongress may well decide, as it has in the Civil Service and Foreign Service contexts, that more protection should be afforded a former spouse of a retired service member. This decision, however, is for Congress alone." McCarty v. McCarty, 453 U.S. at 235-236, 101 S.Ct. at 2743, 69 L.Ed.2d at 608.
Congress responded to the invitation and enacted the Uniformed Services Former Spouse Protection Act (USFSPA) to overrule McCarty. (See first sentence of current Section 1408(c)(1) previously quoted.) The Act states that it applies to retirement pay periods after June 25, 1981.
In Simmons v. Simmons, 453 So.2d 631 (La.App. 3d Cir.1984), our brethren in the third circuit applied the USFSPA retroactively. The couple were married while the husband was in the Air Force, and he retired while they were still married. On May 12, 1982, after the McCarty decision, Mrs. Simmons filed for divorce. The third circuit court found that Congress intended 10 U.S.C. Sec. 1408 to have retroactive application in such a manner that would totally eliminate the McCarty decision. In declaring that the retirement benefits were community property, the court rejected the husband's contention that retroactive application of the legislation would divest him of a vested right and thus violate due process. The Court held that the USFSPA struck a reasonable balance between competing economic interests and the reasonable expectations of the parties concerned. Accord, Menard v. Menard, 460 So.2d 751 (La.App. 3d Cir.1984), in which the divorce was also post-McCarty. See also Anderson v. Anderson, 520 So.2d 1236 (La.App. 5th Cir.), writ denied, 521 So.2d 1187 (La. 1988), (USFSPA applied retroactively to couple who were married in 1963 and divorced in 1975); Rose v. Rose, 483 So.2d 181 (La.App. 2d Cir.1986), (USFSPA applied retroactively to couple who were married in 1958 and divorced in 1979, after the husband had retired from the military.)
Accordingly, it was well established in Louisiana, as apparently it was elsewhere, that the USFSPA applied retroactively to a variety of fact situations. Indeed, it was *1143 the widespread practice of applying the statute retroactively that prompted the 1990 amendment, because Congress disapproved of the "reopening of divorce cases" through partition cases or otherwise to award former spouses shares in military retirement pay. H.R.Rep. No. 665, 101st Cong., 2d Sess. 279, reprinted in 1990 U.S.Code Cong. & Admin.News 2931, 3005.
Accordingly, the issue in partition litigation subsequent to the 1990 amendment becomes one of whether or not the amendment bars a case that in this state would have been "reopened" pursuant to a retroactive application of the USFSPA. In other words, can the 1990 amendment be applied retroactively to bar an action by a former spouse who, but for the amendment, would have been entitled to a portion of her former husband's military retirement pay? We conclude that the amendment applies retroactively to bar the action.
If the rule that Congress can abrogate claims which it previously had the power to establish and regulate does not suffice, (see discussion and cases cited at Footnote 1, supra), then we have the general principle that retroactive application of a change in the law is required absent a legislative mandate to the contrary or unless such application would cause manifest injustice. Bradley v. School Board of Richmond, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). There is no congressional mandate that the 1990 amendment apply prospectively only. Quite to the contrary, the sole purpose of the amendment is a retroactive application of the McCarty rule to cases in which the divorces were rendered prior to the McCarty decision and the nonmilitary spouse did not preserve his or her claim. (See House Report, supra.) Furthermore, statutes, such as the 1990 amendment, which by their terms operate retroactively, are supported by the general presumption of validity that attaches to acts of Congress. Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932).
Thus, the only portion of the Bradley test required here is a determination of whether it would be manifestly unjust to retroactively apply the 1990 amendment to bar the plaintiff's partition suit. In Bradley, the Supreme Court listed three things that we must consider to determine manifest injustice: (1) the nature and identity of the parties; (2) the nature of their rights; and (3) the nature of the impact of the change in law on those rights.
In the instant case the litigants are private individuals, not corporations or public bodies. The right alleged by the plaintiff arises from the relationship of husband and wife that previously existed between them. Thus, the litigants enjoy equal footing with each other, with neither being in a position to "strong arm" the other; the equities of the situation are shared equally.
Nevertheless, the nature of the parties' rights vis-a-vis each other is not purely private. Indeed, the right to receive military retirement benefits is not only public in nature, but of such grave importance as to affect "clear and substantial federal interests." McCarty v. McCarty, supra.
Quite naturally, the plaintiff urges that she has a vested right in a share of the military retirement pay which cannot be affected by a subsequent congressional act. However, the impact of the change in the law on the right alleged by the instant plaintiff could have been avoided entirely had plaintiff preserved that right by mentioning it in her property settlement with defendant. Thus, the 1990 amendment to the USFSPA does not impact all preMcCarty cases, but impacts only those preMcCarty cases wherein the date of divorce and the failure of the nonmilitary spouse to reserve rights to the military retirement benefits combine to bar his or her claim to a share of the benefits.
Plaintiff's argument to the contrary notwithstanding, we hold that the relationships in the instant case under the Bradley three-pronged criterion do not show manifest injustice so as to prevent retroactive application of the 1990 amendment.
Accordingly, we grant the writ and reverse the judgment of the trial court which overruled the defendant's exception of no cause of action. We dismiss the petition of the plaintiff, Brenda Dunham, with prejudice *1144 at her costs in the trial court and on appeal.
WRIT GRANTED; JUDGMENT REVERSED AND RENDERED.
NOTES
[1] Nor does the mere fact that plaintiff's suit was pending when the legislation was enacted cause the amendment to be repugnant to the constitution and bar application of the new legislation to her action. United States v. Heinszen, 206 U.S. 370, 27 S.Ct. 742, 51 L.Ed. 1098 (1907). See also Battaglia v. General Motors Corp., 169 F.2d 254 (2d Cir.), cert. denied, 335 U.S. 887, 69 S.Ct. 236, 93 L.Ed. 425 (1948), wherein plaintiffs sued to recover overtime pay to which they had become entitled under a recent Supreme Court interpretation of the Fair Labor Standards Act. After the suits were filed, Congress adopted legislation eliminating the overtime claims. The court held that Congress, having had the power to adopt the Fair Labor Standards Act to protect interstate commence, had the power to adopt subsequent amendments to prevent injury to commerce. Inasmuch as the plaintiffs' right to overtime pay was subject to the Fair Labor Standards Act, it was subject also to any later amendments. These cases and similar ones too numerous to mention reflect a coherent rationale under which claims relating to matters within the legislative power of Congress are subject to the subsequent exercise of that power to abrogate them. See also Paul v. United States, 687 F.2d 364, 231 Ct.Cl. 445 (1982), cert. denied, 461 U.S. 927, 103 S.Ct. 2086, 77 L.Ed.2d 297 (1983).