In re Maynard Earl ENDSLEY, Debtor.

Maynard Earl ENDSLEY, Plaintiff,

v.

Lena L. ENDSLEY and United States Government Office of Personnel Management, Defendants.

UNITED STATES of America, Counterclaim, Cross–Claim and Third Party Claim Plaintiff,

v.

Maynard Earl ENDSLEY, Counterclaim Defendant,

Lena L. Endsley, Cross–Claim Defendant,

and

Betty L. Endsley, Third Party Defendant.

Bankruptcy No. 92–04317–8P7.
Adv. No. 95–564.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Oct. 21, 1996.

Elinor P. Smith, Tampa, FL, for Debtor Maynard Earl Endsley.

Mitchell J. Matorin, Attorney, Civil Division, Washington, DC, for U.S.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

ALEXANDER L. PASKAY, Chief Judge.

The matter under consideration is another controversy which has its genesis in the dissolution of marriage of the Debtor but, with a different and unusual twist. In order to put the present controversy in an understandable posture, a summary of the procedural background, particularly the relevant events preceding this Chapter 7 case should be helpful.

Maynard Earl Endsley (Debtor) entered the military service in 1943. In September 1948, the Debtor married Lena Rushing now known as Lena Endsley (Lena). In 1965 the Debtor retired from the military, and shortly thereafter began receiving his military pension. In 1971, The Debtor and Lena separated, and their marriage was dissolved with the Final Decree entered in Nevada, on May 24, 1973. Although the Final Decree did divide various assets between the parties, it made no disposition concerning the Debtor's military pension. (Debtor's Exh. 1).

On May 25, 1973, the Debtor married his present wife Betty Endsley. In December 1975, the Debtor obtained temporary employment with the U.S. Civil Service, and by October, became a full time civil service employee accumulating retirement benefits under the Civil Service Retirement Program (CRS). In 1986 he retired from his civil service job, and his military pension was "rolled" into his civil service retirement benefits. As a result, he received his last military retirement check in 1986 (Debtor, Affidavit Exh. 2).

In July 1988, Lena filed a Petition in the State of Louisiana, the then residence of the Debtor, and sought an award of 40% of the Debtor's military pension as a division of community property. (Exh 3). The State Court in Louisiana entered a Judgment against the Debtor in the amount of $48,391.31, and ordered the Debtor to pay Lena 42.5% of his military retirement benefits beginning June 25, 1990. (Exh. 4). Although the Debtor objected to the award of any part of his military retirement benefits contending that any award would be contrary to the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408(c)(1), the objection was overruled. This Judgment was not complied with by either the military or by the Office of Personnel Management (OPM) the agency of the Government in charge of the administration of retirement systems maintained by the Federal Government. On January 23, 1995, Lena obtained an Amended Judgment from the Louisiana State Court virtue of which she was awarded a money Judgment in the amount of $48,391.31 per month with interest until paid. In addition, the Amended Judgment ordered the Debtor to pay to Lena 42.5% of his gross civil service retirement benefits beginning June 25, 1990, to include future cost of living adjustments or the sum of $385.90 per month representing 42.5% of the Debtor's gross civil service retirement benefits of $908.00 per month.

Upon receipt of the Copy of the Amended Judgment, counsel for the Debtor immediately sought to vacate the judgment, and although the Court refused to vacate the Amended Judgment, the court did enter a new Judgment on March 19, 1992, which reduced the percentage of the award to approximately the percentage of the Debtor's military retirement benefit of the total he was receiving under the consolidated benefit program granting Lena 26.56% of the gross retirement benefit the Debtor was receiving. (Exh. 6).

It appears that Lena sent the copy of this last Judgment to the OPM who notified the Debtor on February 20, 1992, that the OPM intends to honor the Judgment, and will mail the percentage awarded to Lena directly. The Debtor objected to any payment to Lena and forwarded a copy of the Nevada divorce decree which verified that the Louisiana Judgment was not "incident to divorce," and which also verified that Lena was not married to the Debtor during the time he accumulated his civil service benefits. The OPM overruled the Debtor's objection and began deducting from the Debtor a monthly retirement check in the amount necessary to pay the money Judgment, and an additional amount representing 26.56% of the Debtor's gross civil service retirement benefits.

On March 31, 1992, the Debtor filed his Petition for Relief under Chapter 7 and obtained his general discharge in July 1992. No monies were deducted by OPM from the Debtor's retirement check between July 1992, and May 1995. In May 1995, the Debtor learned for the first time that as the result of correspondence between Lena and the OPM, the OPM indicated that they would resume deducting the percentage fixed by the last Louisiana Judgment from the Debtor's retirement check. In spite of the fact that the letter informed the Debtor that he will be able to challenge the decision to pay Lena within 30 days, it is without dispute that OPM paid Lena in May prior to the expiration of the time granted for the Debtor to object.

In July 1995, the Debtor instituted an adversary proceeding and sought a determination that the Louisiana Judgment was not "a qualified order" as that term is defined in the Code of Federal Regulations 5 C.F.R. § 831.1703, and requested that this Court enter a Judgment determining that the Debtor's obligation to Lena under the Louisiana Judgment was discharged and that further

monies shall not be deducted from his retirement check. The Debtor in his initial request for relief presented a "Petition" treated as a Complaint and named Lena and The United States Government (sic) Office of Personal Management as Defendants. To further complicate the matter, neither Lena nor the Government filed an answer to the Complaint. On November 3, 1995, the Government filed a Motion and sought leave to file an Answer out of time, coupled with a Counterclaim, a Cross–Claim, and a Third Party Claim.

The Debtor, after several futile attempts to obtain a Final Judgment by Default, did ultimately submit the appropriate papers, and on December 22, 1995, this Court entered a Final Judgment by Default against Lena. In its Final Judgment, this Court ruled that the obligation imposed on the Debtor by the Louisiana Judgment has been rendered legally unenforceable by virtue of the general discharge granted to the Debtor, and that by virtue of Uniformed Services Former Spouses' Protection Act, Pub.L. 97–252, Title X, Sec. 1002(a), codified as 10 U.S.C. § 1408 Lena Endsley is not entitled to any direct payment of any portion of the Debtor's pension or retirement pay to which he is entitled. This Judgment has not been appealed thus it is the final binding determination of her right to any portion of the Debtor's pension or retirement pay.

On January 3, 1996, the Government filed a Motion to Amend the Final Default Judgment entered against Lena even though the Government was not a party to the dischargeability litigation, and the Final Judgment did not grant any relief to the Debtor against the Government. On January 19, 1996, this Court entered an Order on the Government's Motion for Leave to File an Answer Out of Time. The Order in essence granted the Government's Motion and granted leave to file a Counterclaim, Cross–Claim, and a Third Party Claim for the specific purpose of litigating the propriety of payments that have been made in the past to Lena. On March 6, 1996, this Court issued its order on the Government's Motion to Amend the Final Judgment by Default entered against Lena and in favor of the Debt-

or, and denied the Motion to Amend. On June 5, 1996, the Government filed a Motion for Default against the Debtor on its Counterclaim, and a Motion for Entry of a Default in Due Course, which was also set aside when the Debtor filed his reply to the Counterclaim, filed by the Government.

The immediate matters under consideration are the Motion for Summary Judgment, filed by the Government on its Counterclaim against the Debtor, and the Debtor's Motion For Summary Judgment. Both contend that there are no genuine issues of material fact, and based on the same, they are entitled to a Summary Judgment on their respective claims. In support of his Motion the Debtor relies on the following exhibits: Decree of Divorce dated May 14, 1973, entered by the District Court of Nevada (Exh. 1); Debtor's Supplemental Affidavit dated October 3, 1996 (Exh. 2); Petition of Lena Endsley, filed on July 8, 1988, in Louisiana (Exh. 3); Judgment entered on August 7, 1990 (Exh. 4); Amended Judgment entered on January 23, 1992, by the State Court in Louisiana (Exh. 5); Judgment entered by the State Court of Louisiana on March 18, 1992, (Exh. 6). In support of its Motion the Government filed a Declaration of Patricia Rochester, Federal retirement Specialist.

This record leaves no doubt that there are indeed no genuine issues of material fact, and the sole limited issue could be resolved as a matter of law. In spite of the seemingly hard to understand convoluted procedural morass, it is clear that the only issue is the Government's request for relief which is to hold and rule that the Government was legally authorized to pay the sum of $17,760.00 to Lena, and in turn entitled to an order authorizing the Government to withhold from the Debtor, retirement benefits in the sum necessary to reimburse the Government for the monies improperly paid to the Debtor.

Prior to the enactment by Congress of the Uniformed Services Former Spouses' Protection Act, *supra*, federal law precluded State Courts from dividing military retirement benefits pursuant to state community property laws because Congress preempted the subject. *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981). As

stated in *McCune v. Essig,* 199 U.S. 382, 389, 26 S.Ct. 78, 80, 50 L.Ed. 237 (1905), "... [t]he law of the State is not competent to do this". Subsequently, the Statute was amended several times. As a result, State courts were authorized to divide military retirement benefits as community property. In 1990, the Statute was amended again because State courts routinely reopened divorce cases in order to grant military retirement benefits to former spouses of retired serviceman. 10 U.S.C. § 1408(c)(1) now provides that

[A] court may not treat retired pay as property in any proceeding to divide or partition any amount of retired pay of a member as the property of the member and the member's spouse or former spouse, if a final decree of divorce, dissolution, annulment, or legal separation (including a court ordered, ratified, or approved property settlement incident to such decree) affecting the member and the member's spouse or former spouse (A) was issued before June 25, 1981, and (B) did not treat (or reserve jurisdiction to treat) any amount of retired pay of the member as the property of the member and the member's spouse or former spouse.

Numerous courts interpreted this Amendment as one which intended to preclude the reopening of Final Judgment of Dissolution of Marriages issued before 1981, and the decision of the Supreme Court in *McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, in order to divide military retirement benefits under community property law of the State. *Dunham v. Dunham,* 602 So.2d 1139 (La. 1st Cir.1992); *White v. White,* 623 So.2d 31 (La. App. 1 Cir.1993); *Johnson v. Johnson,* 605 So.2d 1157 (La.App. 2 Cir.1992); *Johnson v. Johnson* 824 P.2d 1381 (Alaska 1992). In this case, the Alaskan Supreme Court analyzed the congressional intent of the amendment noting:

The committee is concerned because some state courts have been less than faithful in their adherence to the spirit of the law. The reopening of divorce cases finalized before the Supreme Court's decision in *McCarty v. McCarty* that did not divide retired pay continues to be a significant problem. Years after final divorce decrees

have been issued, some State courts, particularly those in California, have reopened cases (through partition actions or otherwise) to award a share of retired pay. Although Congress has twice stated in report language that this result was not intended, the practice continues unabated. Such action is inconsistent with the notion that a final decree of divorce represents a final disposition of the marital estate.

Other State courts held even before the amendment that the doctrine of res judicata barred the reopening of a divorce case in order to modify property division between the parties as in *Tomlinson v. Tomlinson,* 102 Nev. 652, 729 P.2d 1363 (1986), a Nevada state court decision which is the very state where the marriage of the Debtor and Lena was dissolved. *See also Johnson v. Johnson,* supra. In the case of *Kramer v. Kramer,* 96 Nev. 759, 616 P.2d 395 (1980), the court held that it lacked jurisdiction to modify a judgment entered three years prior to when the action to modify was filed.

This leads to the ultimate question which is whether the Government was justified to decide unilaterally by an in-house administrative fiat that Lena was entitled to the funds paid to the Debtor between 1992 and 1995, thus entitling the Government to deduct the sums paid to Lena from the future retirement benefits of the Debtor.

In order to overcome the foregoing the Government contends that it was not required to "look behind" the last Judgment entered by the Louisiana court on March 19, 1992 (Exh. 6) and claim that their rules and regulations require the OPM to honor the request of Lena.

The proposition urged by the Government finds scant support in the Regulation it relies on 5 C.F.R. § 831.1703 which defines "court order" as follows:

"court order" means any judgment or property settlement issued by or approved by any court of any state, the District of Columbia, the Commonwealth of Puerto Rico, Guam and the Northern Mariana Islands, or the Virgin Islands, and any Indian court in connection with, or *incident to,* the divorce, annulment of mar-

riage, or legal separation of a federal employee or retiree ... (Emphasis supplied). The Regulation defines the term "former spouse" as follows:

"former spouse" means (1) in connection with a court order affecting employee retirement benefits, a living person whose marriage to an employee, Member, or retiree has been subject to a divorce, annulment, or legal separation resulting in a court order; ... (Emphasis supplied).

Even assuming without conceding that the Louisiana court had jurisdiction to amend the Final Decree of Divorce entered by the Nevada Court, there is no doubt that it was not a "court order" within the meaning of that term as defined above because it was not entered as incident to a divorce. After all, the marriage of the Debtor was dissolved almost 19 years before the entry of the Louisiana Judgment and at the time of the entry, Lena was not a former spouse of the Debtor who since acquired an almost second former spouse, Betty. The facial anomaly of the Louisiana Judgments should be apparent when one considers the fact that the Amended Judgment entered on January 23, 1992, (Exh. 5) awarded $48,391.31 to Lena, and 42.5% of the Debtor's gross civil service retirement benefits or, $908.00 per month, when it is clear that the debtor did not accrue any civil service retirement benefits during his marriage to Lena for the simple reason that he was still in the military. He did not accrue the civil service retirement benefits until he was no longer married to Lena. It is noteworthy that the last Judgment, which according to the Government was the "court order" which warranted the decision to pay $17,760.00 to Lena, again awarded the same percentage of the Debtor's gross Civil Service Retirement Benefits, and stated that the amendments are not substantive but merely give effect to the intention of the Court.

5 U.S.C. § 8345(j)(1) while not directly applicable, deals with civil service retirement benefits providing that payment which would otherwise be paid to the retired employee shall be paid by OPM to another person " .... if and to the extent expressly provided for in the terms of any *court decree of divorce* (emphasis supplied). .... or the terms of any court order or court approved property settlement agreement incident to any decree of divorce ..."

The term "court order" was considered by the Fourth Circuit in the case of *Carmody v. Secretary of Navy*, 886 F.2d 678 (4th Cir. 1989), in connection with a claim of a former spouse to the civil service retirement benefits of a retired civil service employee. In *Carmody*, the marriage of Ms. Carmody was dissolved in 1965, and just like in the instant case, the divorce decree was silent as to any disposition of the husband's retirement benefits. Ms. Carmody filed an action in 1983, and sought, for the first time, a division of the ex-husband's retirement pay based on an "independent court ordered property settlement." The District Court determined that she was not entitled to the direct payment provision of the Act. On appeal the Fourth Circuit construed the term "court order" to mean:

[t]o come within the definition of "court order", a court ordered property settlement must be incident to a final decree of divorce. A suit for partition of the undivided assets between tenants in common cannot be fairly construed as a decree incident to divorce. Such a partition suit is indeed independent of the prior divorce proceedings and thus is not incident to the earlier divorce decree. *Carmody* at 681.

Since both the Civil Service Retirement and the Military Retirement Regulations use the same term "incident to a divorce" the conclusion is more than warranted that the Louisiana Judgment was not a "court order" "incident to a divorce." This being the case, it is clear that while there are in fact no genuine issues of material fact, the Government is not entitled to a Judgment as a matter of law, and that the Debtor is entitled to a Judgment in his favor.

It is undisputed that the Final Decree which dissolved the marriage of the Debtor and Lena entered by the Nevada Court on May 14, 1972, contains no terms awarding any portion of the Debtor's military retirement benefits.

Accordingly it is,

ORDERED, ADJUDGED AND DE-CREED that the Motion for Summary Judgment filed by the Government be and the same is hereby denied.

It is further ORDERED, ADJUDGED AND DECREED that the Motion For Summary Judgment filed by Maynard Earl Endsley be and the same is hereby granted.

A separate final judgment will be entered in accordance with the foregoing.

DONE AND ORDERED.