DOLORES G. BOTTIGGI vs. ROBERT A. WALL, SR.

No. 99-P-1737.

Plymouth. November 9, 2001. - April 10, 2002.

Present: BROWN, GREENBERG, & McHUGH, JJ.

*Divorce and Separation,* Pension benefits, Reopening of proceedings. *Pension. Res Judicata.*

A trial judge erred in dismissing a complaint for alimony on the grounds of res judicata, where there was no previous litigation and determination of the property division issue or a competent release of all rights to the parties' undivided property. [433-434]

In an action for alimony, the judge properly ruled that under the Federal Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408(c)(1), the parties' prior divorce decree could not be modified to provide for division of the defendant's military pension, where the divorce decree was issued prior to the effective date of the Federal statute and the decree did not treat or reserve jurisdiction to treat the pension [434-437]; however, this court remanded the case for consideration of the extent to which, and the manner in which, any property remaining in the marital estate other than the pension should be divided between the parties [437].

COMPLAINT for divorce filed in the Plymouth Division of the Probate and Family Court Department on February 2, 1976.

A complaint for alimony, filed on November 19, 1991, was heard by *Stephen C. Steinberg,* J.

*Robert G. Wilson, IV,* for the plaintiff.

*Kevin M. Flannigan* for the defendant.

McHUGH, J. Dolores Bottiggi was divorced from her husband, Robert Wall, by a final decree entered in 1976. In 1991, she filed a complaint seeking an equitable division of Wall's United States Navy retirement pension. A judge of the Probate Court dismissed Bottiggi's complaint on grounds of res judicata and on grounds that, even if the merits were open for consideration, the Federal Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408(c)(1) (1990) (USFSPA), prohibited the

pension division she sought. From that dismissal, Bottiggi appeals.[1] The judge's dismissal of the case on grounds of res judicata was error and, although we agree with his resolution of the USFSPA issue, resolution of that issue left another issue open. We therefore reverse.

The essential facts begin with the complaint for divorce Bottiggi filed in 1976 to dissolve her seventeen-year marriage to Wall, a marriage that had produced two children. In her complaint, Bottiggi sought custody of, and support for, the children, plus sole ownership of the former marital home in Kingston. Wall responded with a cross complaint for divorce in which he also sought custody of the children and ownership of the Kingston property. As the litigation proceeded, both Wall and Bottiggi filed financial statements disclosing their assets, including a $125 weekly payment Wall received as his Navy pension. At some point before the divorce decree entered, Wall and Bottiggi sold the Kingston property and divided the proceeds.[2]

On January 13, 1977, the court awarded a divorce to Bottiggi, nunc pro tunc as of October 27, 1976, and entered a decree granting her child custody and support. The decree, however, contained no provision for alimony or property division, made no mention of the pension, and said nothing about retaining jurisdiction to deal with any aspect of the marital estate later.[3]

On November 19, 1991, nearly fifteen years after the divorce

---

[1]Wall appeals as well, claiming error in the judge's denial of his motion to dismiss Bottiggi's complaint for lack of personal jurisdiction. Although he filed a notice of appeal in timely fashion, he did not take the steps necessary to docket the appeal. Consequently, we do not consider it. See *Larabee* v. *Potvin Lumber Co.*, 390 Mass. 636, 639 (1983); *Marshall* v. *Stratus Pharmaceuticals, Inc.*, 51 Mass. App. Ct. 667, 669 (2001).

[2]After the decree entered, they voluntarily disposed of some Arizona property of minor value and again divided the proceeds.

[3]The record contains no transcript of the hearing that preceded entry of the decree nor does it contain any written agreement for property division. However, the worksheet the judge used to make the calculations and orders the decree contains is part of the record and shows that the judge deleted a preprinted provision dealing with spousal support and conveyance of real estate. By themselves, the worksheet deletions provide no insight into the reasons why the judge made them.

decree, Bottiggi filed a complaint pursuant to G. L. c. 208, § 34, seeking alimony.[4] After delays for reasons here immaterial, the complaint came on for trial. By that time, Bottiggi had waived her alimony claim in favor of a claim for a share of Wall's pension. Moreover, she and Wall had reduced the live issues the case presented to two, i.e., whether the doctrine of res judicata prevented the court from dividing Wall's pension and, if not, whether the court had the power to divide the pension, or to consider that pension as Wall's asset when dividing other marital property,[5] given the provisions of the USFSPA.

After trial, the judge found[6] that Wall had disclosed the existence of his pension on the financial statement he filed during the 1976 divorce proceedings but that he and Bottiggi "through counsel considered [the pension] and litigated [its] division or *declined to do so* at the time of the divorce" (emphasis added). He also found that, at the time of the divorce, Bottiggi had not asked the court to retain jurisdiction over Wall's pension or to treat it as a divisible marital asset. From those findings, the judge concluded that the doctrine of res judicata barred

---

[4]In material part, G. L. c. 208, § 34, as amended by St. 1990, c. 467, provides as follows:

> "Upon divorce or upon a complaint in an action brought at any time after a divorce, whether such a divorce has been adjudged in this commonwealth or another jurisdiction, the court of the commonwealth, provided there is personal jurisdiction over both parties, may make a judgment for either of the parties to pay alimony to the other. In addition to or in lieu of a judgment to pay alimony, the court may assign to either husband or wife all or any part of the estate of the other, *including but not limited to . . . military retirement benefits if qualified under and to the extent provided by federal law . . . .*"

(Emphasis added.) Statutes 1990, c. 467, inserted the emphasized portions of the statute in circumstances discussed below. See text and note 12, *infra.*

[5]Bottiggi appears to claim that a Marshfield house Wall acquired in 1976 after the parties vacated the marital home but before entry of the divorce decree is part of the marital estate. Apart from that house, Bottiggi does not claim that there is any other marital property. Given his view of the case, the trial judge understandably did not decide whether the estate in fact includes the Marshfield house.

[6]No portion of the trial transcript appears in the record appendix. However, neither party challenges the evidentiary basis for the findings. Instead, both concentrate on whether the judge drew the proper conclusions from those findings.

consideration of the pension in Bottiggi's new action. He also concluded that "[u]nder the USFSPA, the parties' October 27, 1976 divorce judgment may not be modified to provide for division of [Wall's] military pension. 10 U.S.C. § 1408(c)(1), amended by Pub. L. 101-510, § 555(e) (1990)." A resulting judgment dismissed Bottiggi's complaint and this appeal followed.

The recited facts show the error of dismissing Bottiggi's complaint on grounds of res judicata. As the trial judge correctly noted, G. L. c. 208, § 34, permits the Probate Court to divide marital property "upon divorce or upon a complaint in an action brought at any time after a divorce." Before res judicata will impose a limitation on the postdivorce dispositional power § 34 creates, the party seeking the limitation[7] must prove that division of marital property was necessarily involved, litigated, and determined as part of the divorce proceedings themselves. See *Maze* v. *Mihalovich*, 7 Mass. App. Ct. 323, 326 (1979); *Davidson* v. *Davidson*, 19 Mass. App. Ct. 364, 367 (1985).[8] Here the judge found simply that the parties either litigated the property division issue or declined to do so.[9] That is not enough. Only actual litigation and determination, or a

---

[7]Res judicata is an affirmative defense the party seeking its benefits must raise in an answer. Wall did not do so. Indeed, he filed no answer at all. Instead, he permissibly responded to Bottiggi's complaint with a motion to dismiss on jurisdictional grounds. See note 1, *supra*. He should have filed an answer when that motion failed. See Mass.R.Dom.Rel.P. 8(b) and 12(a)(2)(ii) (1975). Omission of an answer, however, does not prevent Wall from pressing the res judicata point here, for the issue was fully litigated on the merits before judgment entered. See *Bendetson* v. *Building Inspector of Revere*, 36 Mass. App. Ct. 615, 620 n.9 (1994).

[8]Neither listing an asset in a financial statement nor using that asset as a basis for determining child support obligations in and of itself divides that asset or prevents the court from dealing with it in postdivorce proceedings under G. L. c. 208, § 34. See *Davidson* v. *Davidson*, 19 Mass. App. Ct. 364, 367-368 (1985).

[9]No transcript of the original divorce proceedings was before the judge. As stated earlier, however, see note 5, *supra*, Wall does not challenge that finding. Instead, he repeatedly argues in his brief that the parties either litigated the issue of property division in the original proceedings or "negligently" failed to do so. Nothing in the record supports the negligence claim which, in any event, is no substitute for the requirement that property division be actually litigated. Wall's failure to show actual litigation of the property division issue distinguishes cases like *Drapek* v. *Drapek*, 399 Mass. 240, 244 (1987), and

competent release of all rights to the undivided property, will suffice.

We thus turn to the USFSPA, a statute Congress enacted to remedy a problem created by an earlier effort it had undertaken to solve a different problem. From the Congressional standpoint, the Supreme Court of the United States created the original problem when it held in *McCarty* v. *McCarty*, 453 U.S. 210, 223 (1981) (*McCarty*), that "the application of community property law conflicts with the federal military retirement scheme" and, as a result, that Federal law prohibited State courts from dividing military retirement pay pursuant to State community property laws.

Congress thought that retirement pay should not be exempt from division under State laws and acted promptly to undo *McCarty* by passing the USFSPA, 10 U.S.C. § 1408 (1982). According to the Senate Report that accompanied the bill to the floor,

> "[t]he [USFSPA was] intended to remove the federal preemption found to exist [in *McCarty*] and permit State and other courts of competent jurisdiction to apply pertinent State or other laws in determining whether military retired or retainer pay should be divisable."

S. Rep. No. 97-330, 97th Cong., 2d Sess. 16 (1982), reprinted in 1982 U.S.C.C.A.N. 1555, 1611.

With the USFSPA's adoption, military pensions became divisible in the same manner as other marital assets. *Mansell* v. *Mansell*, 490 U.S. 581, 589 (1989).[10] Soon, however, State courts began permitting litigants to reopen divorce judgments that had become final before the USFSPA's enactment in order to divide pensions in accordance with the power the Act conferred. To Congress, those reopenings were undesirable and, in a series of nonlegislative measures, it made its feelings known. When the message embodied in those measures did not sink in, Congress turned to remedial legislation. As explained in the House Report dealing with that legislation,

---

*Kirtz* v. *Kirtz*, 12 Mass. App. Ct. 141, 145 (1981), both of which rejected attempts to modify property divisions the court had made earlier.

[10]Neither Bottiggi nor Wall contends that Massachusetts law somehow operates independent of the USFSPA's enabling provisions.

"some state courts have been less than faithful in their adherence to the spirit of the [USFSPA]. The reopening of divorce cases finalized before the Supreme Court's decision in McCarty . . . that did not divide retired pay continues to be a significant problem. Years after final divorce decrees have been issued, some state courts, particularly those in California, have reopened cases (through partition actions or otherwise) to award a share of retired pay. Although Congress has twice stated in report language that this result was not intended, the practice continues unabated. Such action is inconsistent with the notion that a final decree of divorce represents a final disposition of the marital estate."

H.R. Rep. No. 101-665, 101st Cong., 2d Sess. 279 (1990), reprinted in 1990 U.S.C.C.A.N. 2931, 3005.

The remedial legislation was enacted as an amendment to 10 U.S.C. § 1408(c)(1). As amended, the section continued to provide that, with limitations having no impact on this case, State courts had the power to divide military pensions in accordance with State laws governing division of other marital property, except that a State court could not divide military pensions

"if a final decree of divorce . . . affecting the [former member of the military] and the member's spouse . . . (A) was issued before June 25, 1981,[11] and (B) [that decree] did not treat (or reserve jurisdiction to treat) any amount of [retirement] pay of the member as property of the member and the member's spouse . . . ."[12]

As noted earlier, the 1976 decree dissolving Bottiggi's marriage to Wall neither "treat[ed]" nor "reserv[ed] jurisdiction to

---

[11]June 25, 1981, is the day before the Supreme Court decided *McCarty.* Choice of that date shows a continued Congressional focus on fixing what it viewed as the *McCarty* problem even as it corrected what it thought were the baleful consequences of its initial remediation effort. See *Mansell* v. *Mansell,* 490 U.S. at 588 n.7.

[12]Effective December 29, 1990, just seven weeks after the 1990 amendment to § 1408(c)(1) became effective, G. L. c. 208, § 34, was amended to allow division of "military retirement benefits if qualified under and to the extent provided by federal law." See note 4, *supra.* By amending the statute in that manner, the Legislature manifestly and immediately sought to give State law the power and flexibility the Federal amendment provided.

treat" Wall's Navy pension. Moreover, apart from the appearance of that pension as an income source on Wall's financial statement, nothing in the present record suggests that the court "treat[ed]" that pension in the proceedings before entry of the decree. Absent some escape hatch, the USFSPA therefore precludes the pension division Bottiggi now seeks.

Bottiggi proposes that G. L. c. 208, § 34, itself provides her with the necessary means of escape. She argues that, by empowering the Probate Court to divide property after a divorce, § 34 gives the court "continuing jurisdiction" to divide any property in the marital estate. That continuing jurisdiction, she argues, should be viewed as the kind of reservation of jurisdiction 10 U.S.C. § 1408(c)(1)(B) describes.

Primarily for two reasons, Bottiggi's argument is unpersuasive. First, the argument is wholly eroded by § 34's express language. Section 34 states that property may be divided "upon a complaint in an action brought at any time after a divorce" but only if there is, at the time the new complaint is filed, "personal jurisdiction over both parties." A property division under § 34 thus is not simply a continuation of the original proceeding. See *Cherrington* v. *Cherrington*, 404 Mass. 267, 269-271 (1989). Instead, it requires a new complaint accompanied by a new jurisdictional assessment. *Vangel* v. *Martin*, 45 Mass. App. Ct. 76, 78-79 (1998). Requiring a new assessment of jurisdiction is fundamentally inconsistent with the notion that the new proceedings are "jurisdictionally" dependent on, or "jurisdictional" extensions of, the old.

Second, the continuing jurisdiction theory, in a variety of guises, has been tried elsewhere and almost universally rejected in favor of reading the USFSPA in the manner its words quite plainly require, i.e., if a decree was entered before June 25, 1981, division of a military pension pursuant to State law is impermissible unless the divorce decree treats, or reserves jurisdiction to treat, that pension later. See *Kemp* v. *United States Dept. of Defense*, 857 F. Supp. 32, 33 (W.D. La. 1994); *Johnson* v. *Johnson*, 824 P.2d 1381, 1383 (Alaska 1992); *In re Marriage of Booker*, 833 P.2d 734, 739 (Colo. 1992); *Dunham* v. *Dunham*, 602 So. 2d 1139, 1143 (La. Ct. App. 1992); *Johnson* v. *Johnson*, 605 So. 2d 1157, 1160-1161 (La. Ct. App. 1992);

*White* v. *White*, 623 So. 2d 31, 34 (La. Ct. App. 1993); *Holly-field* v. *Hollyfield*, 618 So. 2d 1303, 1304-1305 (Miss. 1993); *Mings* v. *Mings*, 841 S.W.2d 267, 269-270 (Mo. Ct. App. 1992); *Havlen* v. *McDougall*, 22 S.W.3d 343, 347 (Tex. 2000). But see Reppy, The 1990 U.S.F.S.P.A. Amendment: No Bar to Recognition of Tenancy in Common Interest Created by Pre-*McCarty* Divorces that Fail to Divide Military Retired Benefits, 29 Idaho L.R. 941 (1992).

The case of *Buys* v. *Buys*, 924 S.W.2d 369 (Tex. 1996), on which Bottiggi heavily relies, is not to the contrary. The court specifically stated that the husband's military retirement benefits were encompassed by a property settlement agreement's residuary clause. *Id.* at 372-373. The settlement agreement was incorporated in the divorce decree and thus the decree itself "treated" the benefits. *Ibid.* See *Havlen* v. *McDougall*, 22 S.W.3d at 346-347.

Concluding that the court cannot now divide Wall's Navy pension, however, does not end the matter. Nothing in 10 U.S.C. § 1408(c)(1) prohibits a court from considering a military pension as an asset of the pensioner when dividing other marital property. See *Cohen* v. *Murphy*, 368 Mass. 144, 148 (1975); *Mahoney* v. *Mahoney*, 425 Mass. 441, 446-447 (1997). Because of his resolution of the res judicata issue, the trial judge never reached Bottiggi's contention that Wall's pension should be placed on his side of the ledger when the court divides any other property remaining in the marital estate.[13] We therefore reverse the judgment of dismissal and remand the case to the Probate Court for consideration, in a manner consistent with this opinion, of the extent to which, and manner in which, any property remaining in the marital estate other than Wall's Navy pension should be divided between Bottiggi and Wall.

*So ordered.*

---

[13]At best, the record is ambiguous about whether there is any such property. See note 5, *supra*. That question necessarily will require further exploration in the trial court.